## LOUISVILLE & N. R. CO. et al. v. CHATTERS.*

Circuit Court of Appeals, Fifth Circuit. June 2, 1928.

No. 5169.

1. **Courts ⬳255, 268—Federal statutes determine jurisdiction of federal courts and district in which suit may be brought (Jud. Code, §§ 24 (1), 51; 28 USCA §§ 41(1), 112).**

Federal statutes (Judicial Code, §§ 24(1), 51; 28 USCA §§ 41(1), 112), not state statutes, determine jurisdiction of federal courts, and district in which suit within jurisdiction of such court may be brought.

2. **Courts ⬳274(14)—Federal court's jurisdiction of suit against foreign corporation is not dependent on asserted cause of action being one arising in state of suit, or out of business transacted therein (Jud. Code, §§ 24 (1), 51; 28 USCA §§ 41(1), 112).**

Federal court's jurisdiction, under Judicial Code, §§ 24(1), 51 (28 USCA §§ 41(1), 112), of suit based on transitory cause of action brought by citizen of district in which suit is brought against corporation organized under law of another state, is not dependent on asserted cause of action being one which arose in state in which suit is brought, or out of business transacted therein; but attaching of federal court's jurisdiction in such case is dependent on corporation sued doing business in state in which suit is brought, and having there an agent on whom process against it properly may be and is served.

3. **Appeal and error ⬳274(1)—Exception to jurisdiction, alleging defendant was doing business in state and had agent for service of process therein, raised no question regarding service.**

Exception to court's jurisdiction, which alleged that defendant was doing business in Louisiana and had appointed an agent for service of process within that state, raised no question as to effectiveness of service of process against defendant, if suit was one within court's jurisdiction.

4. **Courts ⬳274(3)—Action for personal injuries against corporation of another state could be brought in district of plaintiff's residence, though accident occurred outside (Jud. Code, §§ 24(1), 51; 28 USCA §§ 41(1), 112).**

Passenger's action against railroad corporation for personal injuries, being transitory in its nature, and jurisdictional amount being involved, and action being between citizens of different states, suit could be maintained in district in which plaintiff was resident, under Judicial Code, §§ 24(1), 51 (28 USCA §§ 41(1), 112), even though it arose out of alleged accident occurring outside state.

5. **Appeal and error ⬳1040(10)—Overruling exception to petition on ground of vagueness regarding time of alleged injury held not prejudicial, where defendant knew date of accident.**

In action by passenger for injuries sustained when window of railroad car broke, overruling defendant's exception to petition on

*Rehearing denied July 10, 1928.

ground of vagueness as to exact time alleged injury to plaintiff was sustained *held* not prejudicial, where defendant's train conductor and other employees testified that glass-breaking incident occurred on certain date, and it was admitted that plaintiff was in car in which that incident occurred.

**6. Carriers ⚓⟿308—Initial carrier repairing defects in cars was liable for injury to passenger occurring on another line, if negligent failure to perform task caused or contributed to injury.**

Where initial carrier, under arrangement for operation of train, cleaned, repaired, and inspected coach in which passenger sustained alleged injury, as well as other cars in train, prior to its departure, and passenger sustained alleged injury to eyes as result of breaking of window in car, as result of outside screen of one window crashing against and breaking glass of another window, initial carrier was liable for injury complained of, if its negligent failure to properly perform its task caused or proximately contributed to injury occurring on part of through route operated by another railroad.

**7. Carriers ⚓⟿321(20)—Instruction that, if ticket sold passenger contained certain provision, initial carrier was not liable for injuries sustained on another line held properly refused.**

In action by passenger for injury sustained when window glass in railroad car broke as result of loose screen, where evidence showed initial carrier, under arrangement for operation of train, repaired and inspected coaches before departure, instruction that, if ticket sold by initial carrier contained provision that selling carrier was not responsible beyond its own line, and that accident occurred on part of through route operated by another railroad, and if there was no fault or negligence of initial carrier, causing or contributing to accident, verdict must be for such carrier, *held* properly refused.

**8. Appeal and error ⚓⟿1050(1)—Plaintiff's testimony that doctor had stated plaintiff was suffering with traumatic conjunctivitis held not prejudicial error.**

In action by passenger against railroad companies for injuries to eye, permitting plaintiff to testify that doctor stated that he was suffering with traumatic conjunctivitis, and to go to see another doctor, *held* not prejudicial error, in view of testimony of physicians.

**9. Appeal and error ⚓⟿1050(1)—Where plaintiff claimed injury caused loss of earnings as representative of lumber company, admitting letters indicating relation of employer and employee held not reversible error.**

In action for personal injuries, where plaintiff's petition contained allegations to effect that alleged injury to his eye caused him to lose earnings as representative of lumber company, permitting introduction in evidence of letters from lumber company to plaintiff, indicating existence of relation of employer and employee between lumber company and plaintiff, *held* not reversible error, where uncontradicted evidence of all parties to suit showed existence of that relation.

**10. Carriers ⚓⟿320(1)—Whether passenger sustained injury from broken window glass caused by railroad companies, and sustained recoverable pecuniary damages, held for jury.**

In action by passenger for injuries alleged to have been sustained when outside screen on railroad car became loose and crashed against window, breaking glass, question whether plaintiff was injured as alleged, and whether each of defendant railroad companies was chargeable with fault causing or proximately contributing to injury, and whether plaintiff sustained recoverable pecuniary damages in consequence of injury, *held* for jury.

In Error to the District Court of the United States for the Eastern District of Louisiana; Louis H. Burns, Judge.

Action by Aaron A. B. Chatters against the Louisville & Nashville Railroad Company and another. Judgment for plaintiff (17 F. (2d) 305), and defendants bring error. Affirmed.

J. Blanc Monroe, Monte M. Lemann, and Walter J. Suthon, Jr., all of New Orleans, La., for plaintiff in error Southern Ry. Co.

George Denegre, Victor Leovy, Henry H. Chaffe, Harry McCall, and J. Hy Bruns, all of New Orleans, La., for plaintiff in error Louisville & N. R. Co.

George Piazza, of New Orleans, La., for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This was an action by the defendant in error, a citizen of Louisiana (herein referred to as the plaintiff), against the plaintiffs in error, the Louisville & Nashville Railroad Company, a Kentucky corporation (herein referred to as the L. & N.), and the Southern Railway Company, a Virginia corporation (herein referred to as the Southern), to recover damages for injuries sustained by plaintiff as the result of glass getting into his eyes through the breaking of a window in the railroad car in which, as a passenger, he was traveling on a through train called the Piedmont Limited from New Orleans, La., to Washington, D. C., having a through coupon ticket, bought from the L. & N., calling for carriage over its line from New Orleans to Montgomery, Ala., over the line of the Atlanta & West Point Railroad Company from Montgomery to Atlanta, Ga., and over the line of the Southern from Atlanta to Washington. The injury occurred when the train was on the Southern's line, and about two hours before it reached Washington, as a result of an outside screen on one window of the car in which plaintiff was riding becoming detached on

one side, and crashing against and breaking the glass of another window. The Southern excepted to the court's jurisdiction on the ground stated below. The L. & N. set up the defense that it was not liable, because the injury occurred while the plaintiff was on the line of the Southern. Both defendants complain of rulings of the court on evidence, and in giving and refusing instructions to the jury.

[1-4] The Southern's exception to the court's jurisdiction was based on the ground that the cause of action made the basis of the suit does not arise out of any act occurring in Louisiana, or out of any business done in that state by the Southern, but arises out of an alleged accident occurring outside of Louisiana. The following provision of the Louisiana statute which was in force when this suit was brought was relied on as the basis of the exception mentioned:

"The appointment of the agent or agents or officer upon whom service of process may be made shall be contained in a written power of attorney accompanied by a duly certified copy of the resolution of the board of directors of said corporation consenting and agreeing on the part of the said corporation that any lawful process against the same which is served upon the said agent or officer shall be a valid service upon said corporation —and that the authority shall continue in force and be maintained as long as any liability remains outstanding against said corporation growing out of or connected with the business done by said corporation in this state." Act No. 184 of 1924, § 2.

The language of this provision indicates a legislative intention to make the service on the designated agent of "any lawful process" a valid service on the corporation appointing such agent, whether the suit in which the process issued is or is not based on a cause of action arising in Louisiana. It seems that the purpose of the concluding clause of the provision was, not to restrict the agency so long as the corporation continues to do business in the state, but to continue the agency in force after the corporation ceases to do business in the state "as long as any liability remains outstanding against said corporation growing out of or connected with the business done by said corporation in this state."

But, whether that statute does or does not have the meaning contended for by counsel for the Southern, the court had jurisdiction of the suit, because it was between citizens of different states and involved the jurisdictional sum or value (Judicial Code, § 24 (1), 28 USCA § 41 (1), and the suit was subject

to be brought in the court below under the provision of section 51 of the judicial Code (28 USCA § 112), "where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." Federal, and not state, statutes determine the jurisdiction of federal courts, and the district in which a suit within the jurisdiction of such court may be brought. Barrow Steamship Co. v. Kane, 170 U. S. 100, 18 S. Ct. 526, 42 L. Ed. 964. A federal court's jurisdiction of a suit, based on a transitory cause of action, brought by a citizen of the district in which the suit is brought against a corporation organized under the law of another state, is not dependent on the asserted cause of action being one which arose in the state in which the suit is brought or out of business transacted therein. The attaching of the federal court's jurisdiction in such a case is dependent upon the corporation sued doing business in the state in which the suit is brought and having there an agent upon whom process against it properly may be and is served.

The exception under consideration is not based on the fact that the Southern was not doing business in Louisiana when the cause of action asserted arose and when the suit was brought, or on the person on whom the process in this suit against the Southern was served not being an agent of the Southern authorized to receive service of process against it to Louisiana. The exception alleged that the Southern was doing business in Louisiana, and had appointed an agent for the service of process within that state. That pleading raised no question as to the effectiveness of the service of process against the Southern, if the suit, so far as the Southern is concerned, is one within the court's jurisdiction. The cause of action asserted being transitory in its nature, the court's jurisdiction being founded only on the fact that the action is between citizens of different states, and the plaintiff being a resident of the district in which the suit was brought, the suit was subject to be brought in that district. Decisions on the subjects of what constitutes such doing of business by a corporation in a state other than that of its domicile as to make the corporation suable in such state, and of what constitutes an effective service of process against the corporation in such a suit, are not pertinent to the question raised by the exception under consideration. We are of opinion that the court did not err in overruling that exception.

[5] The Southern complains of the action of the court with reference to a suggestion, made upon the overruling of the above considered exception, that the Southern was entitled to plead vagueness. Upon the making of that suggestion, the court stated, "Exception overruled," and gave the defendants 10 days to answer the petition on the merits. It seems that the court treated the suggestion as an exception to the petition on the ground of vagueness, and overruled that exception. In argument it was suggested that the petition was vague, in that it alleged that plaintiff purchased the described ticket "on or about the 26th day of January, 1925," and boarded the train on which he traveled on the day following the purchase of the ticket. Vagueness in no other respect was attributed to the petition.

Even if the petition properly could be considered to be subject to objection on the ground of vagueness, the record negatives the conclusion that the Southern was harmed by the ruling in question. While the petition indicated a lack of certainty on the part of the pleader as to the exact date of the injury alleged, it informed the defendants of the approximate date of the glass-breaking incident mentioned. It was disclosed in the trial that, from the time the suit was brought the Southern had at hand means of knowing the exact time of the occurrence of the incident described in the petition. Its train conductor and other employees testified that such an incident occurred in the early morning of January 28, 1925, and it was admitted that plaintiff was in the car in which that incident occurred. It is apparent that the Southern was not prejudiced or misled by the petition's lack of definiteness as to the exact time the alleged injury to plaintiff was sustained, and that the judgment is not subject to be reversed because of the last-mentioned ruling.

[6, 7] The ground of the L. & N.'s above-mentioned defense is disclosed in the following requested charge, which sets out a provision of the ticket on which plaintiff was traveling:

"I charge you that, if you find that the ticket sold by the defendant Louisville & Nashville Railroad Company, as initial carrier, to the plaintiff, Aaron A. B. Chatters, contained the following provision: 'In selling this ticket and checking baggage thereon, the selling carrier acts only as agent and is not responsible beyond its own line'—or substantially that language, and if you find that the accident complained of occurred on a part of the through route operated by a railroad other than the Louisville & Nashville Railroad Company, and if you find that there was no fault or negligence of the Louisville & Nashville Railroad Company, causing or contributing to the said accident, then and in that event your verdict should be in favor of the Louisville & Nashville Railroad Company, and against the plaintiff, in so far as said Louisville & Nashville Company is concerned."

Undisputed evidence showed the following: The Piedmont Limited is a through train, run between New Orleans and Washington, consisting of cars furnished by the several railroad companies over whose lines the train runs; the coach in which plaintiff traveled being furnished by the Southern. Under the arrangement for the operation of that train the L. & N. cleaned, repaired, and inspected that coach, as well as other cars in the train, prior to its departure from New Orleans. The screen which caused the accident was fastened by means of two hinges on one side and a thumbscrew on the other side. Prior to the train's departure from New Orleans the window screens were opened by the L. & N.'s employees at New Orleans in order to clean the windows, the thumbscrews being removed for that purpose, and the screens were closed after the windows were cleaned, and the cars in the train were inspected by L. & N. employees after the screens had been opened and closed, and prior to the departure of the train. The L. & N. undertook to repair any defects disclosed while the cars were in its charge at New Orleans, the expense of such repairs to cars contributed by the Southern being chargeable against the Southern. Other inspections were made at several points passed by the train on its journey from New Orleans to Washington; such inspections, so far as they concerned the thumbscrews used to hold the screens in place, consisting in employees looking at the screens and their fastenings as they walked past the windows, the screens or the thumbscrews used to hold them in place not being touched, if nothing wrong or out of repair was disclosed by looking at them. Under the arrangement for the operation of the Piedmont Limited, the L. & N. undertook the task of cleaning the windows of the car in which plaintiff traveled, and of replacing and refastening the screens on those windows in preparation for the journey from New Orleans to Washington. The L. & N. was liable for the injury complained of, if its negligent failure properly to perform that task caused or proximately contributed to that injury.

Under the charge given by the court, the

jury were not warranted in finding against the L. & N. if it exercised due care in closing and fastening the screen, which came loose and caused the breaking of the glass whereby plaintiff was injured. Evidence adduced furnished support for findings that the incident to which the injury complained of was attributed would not have occurred, if due care had been exercised by the L. & N.'s employees at New Orleans in replacing and refastening the window screen, which became detached on the side on which the thumbscrew was used, or if the employees, who made inspections after the car in which plaintiff was got on the Southern's line, had exercised proper care to ascertain whether the screens then were or were not securely fastened. Without explanation, the above set out requested charge, by reason of its recital of the quoted ticket provision and its omission of any mention of the L. & N.'s preparation of the car for its entire journey from New Orleans to Washington, was calculated to divert the jury from the consideration of the question as to due care being or not being used in replacing and refastening the screens before the car left New Orleans. In view of this consideration, and of the above-mentioned instructions given by the court in its charge to the jury, we are not of opinion that it was reversible error to refuse to give the requested charge under consideration.

[8] Before plaintiff testified as a witness in his own behalf, three physicians testified as to their being consulted by plaintiff as to the condition of his eye after his return to New Orleans. The first physician examined testified that he was consulted by plaintiff about February 3 or 4, 1926, found plaintiff's eye red, irritated, and watery, and advised him to go to an eye specialist. The other two physicians testified to the effect that they were eye specialists, that they were consulted by plaintiff as to his eye, and that they diagnosed the trouble as traumatic conjunctivitis, an inflammation caused by an injury. One of those physicians testified to the effect that he found a small piece of glass in plaintiff's eye, and removed it. Upon plaintiff being examined as a witness, he gave a narrative of his visits to several physicians in regard to his eye. When in the course of that narrative the plaintiff stated that he went to see Dr. Rudolph Matas and started to state what Dr. Matas said, the defendant objected on the ground that what the doctor said was hearsay. Upon the overruling of that objection, the plaintiff testified that "Dr. Matas stated I was suffering with traumatic conjunctivitis and to go to see Dr. Hardin." Several physi-

cians, including Dr. Hardin, who were witnesses for the defendant, testified to the effect that the conjunctivitis from which plaintiff suffered was not due to glass or other foreign substance getting into his eye.

As the jury had before them the testimony of several physicians who were witnesses for the plaintiff, and the testimony of several other physicians who were witnesses for the defendant—the testimony of the former tending to prove that the trouble in plaintiff's eye was due to small pieces of glass or other foreign substance getting into it, and the testimony of the latter tending to prove that trouble was not due to any foreign substance getting into the eye—it seems quite reasonable to infer that the jury's conclusion as to the cause of the plaintiff's eye trouble was based on a consideration of the testimony of physicians given in the presence of the jury, and to no extent upon the abovementioned statement of plaintiff as to what Dr. Matas said, especially as there was an absence of any evidence that Dr. Matas made an examination of plaintiff's eye; nothing in plaintiff's own testimony being inconsistent with the conclusion that the deposed to statement of Dr. Matas as to the condition of plaintiff's eye was based solely on what plaintiff said to him as to the cause of the trouble. We are of opinion that there is no reasonable ground for believing that the result of the trial was affected to any extent by the statement of the plaintiff which is under consideration, and that the admission in evidence of that statement was not prejudicial error.

[9] Plaintiff's petition contained allegations to the effect that the alleged injury to his eye caused him to lose earnings as representative of the Mullins River Lumber Company. As a witness in his own behalf, plaintiff testified to the following effect: In the fall of 1925 he was employed by that company to sell its products and its capital stock. He was to receive a salary and commissions. That company then was "just newly formed." Prior to his injury plaintiff had interested several corporations in products of the lumber company, those corporations agreeing to buy mahogany to be supplied by that company, a price being agreed on which was to be paid if the mahogany came up to specifications the company had given plaintiff. The injury to plaintiff's eye kept him from following up and concluding those deals. A written contract between plaintiff and that company, showing the appointment of plaintiff as that company's representative to dispose of all

commodities produced by it was admitted in evidence without objection.

The defendant introduced in evidence the depositions of two witnesses who resided in Honduras (where the company mentioned was organized and located), and had knowledge of that company. Their testimony was to the effect that that company was organized for the purpose of operating a sawmill to convert logs into lumber, that it had not operated a sawmill or produced anything at the time the depositions were taken, that plaintiff was employed by that company and was to get a commission on any business transacted in New Orleans, but he had made no sale and had earned no commissions, and that that company was not in a position to fill, by shipment of lumber, any orders for sales of lumber which plaintiff might have obtained during the months of December, 1925, and January to and including July, 1926.

During the examination of the plaintiff as a witness in rebuttal, the court, over objections of the defendants, permitted the introduction in evidence of two letters of the Mullins River Lumber Company to plaintiff, both written in November, 1925. One of those letters contained suggestions and directions to be followed by plaintiff in negotiations for the sale of the lumber company's products. The other letter was with reference to shipments by the lumber company to plaintiff of samples of British Honduras woods. We are not of opinion that those letters contained anything that could have prejudiced the defendants. Nothing in the letters rebutted or was in conflict with the testimony contained in the depositions introduced by the defendants. The fact that those letters indicated the existence of the relation of employer and employee between the lumber company and plaintiff did not make those letters harmful to the defendants, as uncontradicted testimony offered by all parties to the suit showed the existence of that relation. We are of opinion that the ruling under consideration did not involve reversible error.

We shall not comment on other complained of rulings on evidence. A consideration of those rulings has led us to the conclusion that none of them was harmfully erroneous.

A part of the court's charge, which was excepted to, fills more than three pages of the printed transcript of the record. That part of the charge contains statements and instructions which are obviously unobjectionable. The exception as reserved is not sustainable.

[10] The evidence was such that the questions whether plaintiff was or was not injured as alleged, whether each of the parties sued was or was not chargeable with fault causing, or proximately contributing, to that injury, and whether plaintiff did or did not sustain recoverable pecuniary damages in consequence of that injury, were for the jury. It follows that requests that verdicts in favor of the defendants be directed were properly refused.

We conclude that the record shows no reversible error. The judgment is affirmed.