**SUNSHINE et al. v. SOUTHLAND COTTON OIL CO.**

**Civ. A. No. 2143.**

District Court, W. D. Louisiana, Shreveport Division.

Nov. 6, 1947.

Wilson, Abramson & Maroun, of Shreveport, La., for plaintiffs.

W. M. Phillips, of Shreveport, La., for defendant.

DAWKINS, District Judge.

Plaintiffs, doing business as a partnership (the domicile of which is not shown) composed of Ike Sunshine, a citizen of Tennessee, and Meyer Crystal, a citizen of Mississippi, sued the defendant, a Texas corporation, in this court, on an alleged offer and acceptance to sell "all of 1945–1946 season accumulation of scrap wool press cloth, f. o. b., defendant's mills" and charging breach of such agreement by refusal to deliver said merchandise. The petition alleges damages to the extent of $5,000 by reason of the enhancement of prices of the cloth.

Defendant has moved to dismiss for want of proper venue in this court, in which jurisdiction is invoked solely on the ground of diversity of citizenship.

After argument of the motion, plaintiffs filed an amended complaint, alleging that defendant "operates mills in various states and particularly a mill in Bossier Parish, Louisiana, the output of which was contracted for as set forth in the original complaint and was to be delivered to the plaintiffs, f. o. b., Bossier Parish, Louisiana, as will appear in the original complaint." Attached to this amendment is the affidavit of Sunshine supporting it. Plaintiff, at the argument, also filed an affidavit of one of its attorneys, to which was attached copy of his letter dated April 8, 1947, to the defendant granting "an additional twenty (20) days extension in the above case."

There was also filed on behalf of defendant the affidavit of its manager of the Bossier City plant to the effect that he was "agent for service of process in the state of Louisiana"; that the defendant is a Texas corporation, with its domicile and "general offices * * * in Paris, Texas, where all its general records are kept, and all its executive officers are located." Further, that the controversy that brought about this suit arose through "a telegram sent * * * by Sunshine from Chatanooga, Tennessee," to defendant at "Paris, Texas, on October 10, 1945, and reply thereto by" defendant "from Paris to * * * Sunshine at Chatanooga * * * on October 12, 1945"; that no part of said dealings were had in the state of Louisiana or by any Louisiana employees of the corporation; that all sales of the commodity "are handled by the officers of the corporation at Paris * * * for the reason that individual mill managers are not ordinarily familiar with the market fluctuations thereof, and that after making sale of the company's output the home office notifies the mill managers of the sale, and prices and other conditions thereof and authorizes delivery by the mill managers, such as affiant, said deliveries being mainly ministerial acts on the parts of the mill managers."

It thus appears that the action is a transitory one in personam for breach of a contract, made outside this state, with respect to a commodity which, in so far as anything to the contrary appears, might become available thereunder in other states than Louisiana. Plaintiffs seem to concede that, unless the contract was in regard to Louisiana business, or to be performed here, the fact that defendant is qualified to do business in this state would not support the venue between two foreign corporations or persons with respect to matters arising wholly beyond its borders. They contend that since one of the mills of defendant was in Bossier City in this district, where delivery of part of the merchandise was to be made, this makes the case one involving business done or contemplated in this state. They cite a number of cases but those discussed as most pertinent are Louisville & N. R. Co. v. Chatters, 279 U.S. 320, 49 S. Ct. 329, 73 L.Ed. 711; Id., 5 Cir., 26 F.2d 403; Pittman Bros. Const. Co. v. American Indemnity Co., 194 La. 437, 193 So. 699; Staley-Wynne Oil Corporation v. Loring Oil Co., 182 La. 1007, 162 So. 756; United Oil & Natural Gas Products Corporation v. United Carbon Co., 171 La. 374, 131 So. 52.

Louisville & N. R. Co. v. Chatters was by a citizen of Louisiana brought at his own domicile in the city of New Orleans against a Kentucky corporation, which had sold him a ticket to Washington, D. C., and under which the plaintiff claimed injuries from an accident happening in the state of Virginia. It is sufficient, I think, to quote one of the syllabi of that case [26 F.2d 403]: "Passenger's action against railroad corporation for personal injuries, being

transitory in its nature, and jurisdictional amount being involved, and action being between citizens of different states, suit could be maintained in district in which plaintiff was resident, under Judicial Code, §§ 24(1), 51 (28 U.S.C.A. §§ 41(1), 112), even though it arose out of alleged accident occurring outside state."

In United Oil & Natural Gas Products Corporation v. United Carbon Co. the action was by the vendor, who had sold extensive real and personal properties to the defendant, located in this state, for the alleged value of stock promised it in the defendant corporation and in which a vendor's lien upon both real and personal property here was asserted. The following is quoted from 131 So. at page 54: "Our opinion is that the liability of the defendant, for any unpaid part of the price of the property in Louisiana, bought by the defendant from the plaintiff in New York, if any such liability remains unpaid and if the plaintiff therefore has a cause of action anywhere, is a liability connected with the business done by the defendant in this state. The term, 'the business done by said corporation in this state,' does not mean the single transaction by which the liability was incurred. It means the business done generally by the corporation in this state, and by the doing of which the corporation is deemed to be in the state, under the protection of the laws of the state, and subject to the jurisdiction of the courts of the state. The liability disclosed by the pleadings and the record in this case, if there is any such liability, is for a part of the consideration for the transfer by the plaintiff to the defendant of property in this state, both real and personal property, to be used by the defendant corporation, and in fact used by the defendant corporation, in 'the business done by said corporation in this state.' It would be difficult to imagine a liability more closely connected with the business done by the corporation in this state."

In Pittman Bros. Const. Co. v. American Indemnity Co., a principal contractor for public works sued in the state court of Calcasieu Parish the surety on the bond of its subcontractor for reimbursement of sums paid in discharge of liens, under a contract performed in that parish. It was held by the state court that defendant, a foreign corporation, in a purely personal action, by a citizen of this state, domiciled in the city of New Orleans, could be sued only at the capital or domicile of the secretary of state. The following is quoted from the decision [194 La. 437, 193 So. 701]:

"The subcontractor agreed to furnish all material and labor necessary for the installation of all electric wiring included in the principal contract between the contractor and the Sewerage Board, the owner, of the City of Lake Charles, State of Louisiana. As the principal contract was made within this State, and was to be enforced here, it is difficult to understand how it can be reasonably contended that the subcontract, which was intended to carry out the principal contract, in a material part, was not also intended to be enforced likewise in the City of Lake Charles, within this State.

"The cause of action asserted by plaintiff, the contractor, against the surety of the subcontractor arose only after the completion of the subcontract in the City of Lake Charles, Louisiana, through the default of the subcontractor in not turning over to the contractor and the owner, in the City of Lake Charles, the sewerage treatment plant, constructed in that city, free from all liens and encumbrances.

"Manifestly, the default of the subcontractor did not take place in the State of Texas but within the limits of the State of Louisiana. As this default is the basis of the suit brought by plaintiff, the contractor, against the surety of the subcontractor, necessarily, the cause of action sued upon arose within the limits of the State of Louisiana."

Thus it was an action for the breach of a contract made and wholly performed in this state.

In Staley-Wynne Oil Corporation v. Loring Oil Co., the court sustained a plea to the jurisdiction, and in doing so, distinguished it from that of United Oil & Natural Gas Products Corporation v. United Carbon Co., the last referred to above, as follows [182 La. 1007, 162 So. 757]:

"In United Oil & Natural Gas Products Corporation v. United Carbon Co., 171 La. 374, 131 So. 52, 54, we construed the act as

limiting the jurisdiction of state courts over such corporations to cases of liability growing out of or connected with the business done by them in this state. In that case both the plaintiff and defendant were foreign corporations and each had complied with Act No. 184 of 1924, prescribing the conditions under which foreign corporations may do business in this state. Because the cause of action under which the suit was filed grew out of a contract which the parties entered into in the state of New York, defendant excepted to the jurisdiction of the courts of this state. We held that the exception was not well founded and overruled it, but the facts of that case were that each of the corporations at the time the contract was entered into in New York owned considerable properties in the parish of Ouachita, this state, where each was engaged in the business of manufacturing carbon black out of natural gas. By the terms of the contract, the plaintiff corporation sold to the defendant thirty acres of land in Ouachita Parish, a number of oil and gas leases on lands in that parish, a carbon black manufacturing plant, warehouses, residences, offices, railroad tracks and sidings and all machinery and equipment on the lands used in the manufacture of carbon black, gasoline, and other products or by-products of oil and gas. Plaintiff reserved the vendor's lien and privilege on the property sold.

"As stated, we held that the exception to the jurisdiction filed by the defendant corporation was not well founded, and overruled it, but our holding was based, not on the ground that foreign corporations authorized to transact business in this state may be sued here on causes of action which arise elsewhere, but upon the ground that while the contract out of which the cause of action grew was entered into in the state of New York, it involved the transfer of property located in this state, and that the obligation assumed by the defendant in connection therewith 'is a liability connected with the business done by the defendant in this state.' "

■■ There appears no dispute but that the alleged contract in the present case was made by a telegram or correspondence between citizens of states other than Louisiana, and that the only basis for the claimed jurisdiction in this district is that defendant owned and operated a mill here, at and from which an undetermined quantity of scrap cloth was, at some indefinite time, to be designated by plaintiff, to be shipped. This does not, in the opinion of the court, involve business done here, in the sense of the cited cases. If so, such a suit could have been brought in any number of states where the defendant had mills. The action is purely one for an alleged breach of an executory contract out of which, if successful, complainant would recover a personal judgment. The Louisiana law, Act No. 184 of 1924, requiring foreign corporations to designate agents for service of process in this state, does not require them to "consent, that the courts of this state shall have jurisdiction over them in all cases, but only in those cases where the cause of action grows out of or is connected with business done by them in this state." Staley-Wynne Oil Corporation v. Loring, etc., supra; Harnischfeger Sale Corporation v. Sternberg, 179 La. 317, 154 So. 10; North Butte Mining Co. v. Tripp, 9 Cir., 128 F.2d 588; Knobloch v. M. W. Kellogg Co., 5 Cir., 154 F.2d 45. In North Butte Mining Co. v. Tripp, the Federal jurisprudence was reviewed and it was pointed out by Judge Matthews, a former Louisiana lawyer, that in those cases where it had been held that causes of action arising outside of the state in which defendant had qualified to do business could be asserted, the state law did not confine liability to suits therein to business done or actions arising within their own borders. The Louisiana law has been interpreted by the Supreme Court of this state to be the same in this respect as that of the Montana statute.

The plea to the venue should be sustained.

Proper decree should be presented.