W. J. BLOCKER *v.* W. W. WHITTENBURG, Captain and Owner of Steamer B. E. Clarke.

The *lex fori* governs the admissibility and effect of evidence.
The principle as to the liability of common carriers laid down in the case of *Watts* v. *Steamer Saxon,* 11 An. 43, re-affirmed.

APPEAL from the Fourth District Court of New Orleans *Reynolds,* J. *H. B. Eggleston,* for plaintiff and appellant. *Charles B. Singleton,* for defendnat

MERRICK, C. J. The court did not err in excluding the deposition of *W. P. Blocker,* the son of the plaintiff. The admissibility of the testimony, as well as the sufficiency of the proof, are judged of by the laws of Louisiana, and not those of Texas where the plaintiff resides and the deposition was taken. The general rule, subject to several exceptions, is that the *lex fori* governs the admissibility and effect of evidence. 17 L. R. 458 ; 19 L. R. 214, 215.

Descendants are expressly prohibited from being witnesses in civil cases for or against their ascendants. This prohibition is not based exclusively upon the reason, that these relations are the forced heirs of each other, but because it has hitherto been the policy of the law to withdraw the witness from the necessity of testifying for or against those to whom he sustains such intimate and delicate relations, and to relieve the courts from the embarassment of hearing and deciding upon this kind of proof. 5 L. R. 96 ; 7 Rob. 360. The present

case is not, therefore, within the exception to the general rule, and the testimony was properly rejected.

This suit is instituted to recover of the defendant $1500, for damages alleged to have been done to plaintiff's cotton, which the defendant received at Swanson's Landing, on Lake Caddo, in the State of Texas, without instructions from the plaintiff, during its transportation to New Orleans.

The testimony is very conflicting, but we think the following facts are sufficiently established, viz: that the defendant took eighty-five bales of plaintiff's cotton at Swanson's Landing, on Lake Caddo, aboard of a flat made fast to the B. E. Clark; that he proceeded to Law's Landing and took more cotton on board the flat; that he moored the boat to a tree or stump about a quarter of a mile from the landing; that the flat sunk, in a rainstorm or a gale; that forty-five bales of plaintiff's cotton were at night thrown into the water by the sinking of the flat; that the captain and crew went into the water, which appears to have been shallow, and, by morning, secured the cotton upon the bank of the lake, and there placed the bales upon their edges, a little distance apart, in order that they might more readily dry; that the captain left the cotton in charge of the proprietor of Law's Landing; that he proceeded to New Orleans with the boat; that rainy weather intervened, and on the return of the boat the cotton was received aboard the boat saturated with water; that the captain collected $135 salvage on the cotton, and paid $35; that when the forty-five bales were delivered at New Orleans they were, with the exception of two bales, greatly damaged and rendered unmerchantable, and that the liability of the boat was admitted by the captain and owner.

On this statement of facts we do not think the inquiry important, whether or not the defendant took the cotton without authority. On the question how the injury occured, one of the plaintiff's witnesses swears positively, that the flat was filled with water by the backing of one of the wheels of the boat, while the defendant's witnesses say it was occasioned by the waves. Some of the witnesses, those of the plaintiff, would lead us to think it was but a common rain accompanied with a little wind; others, officers and hands on the boat, describe it as a gale, so severe as to render it dangerous to remain near the pilot house. Again, on the subject of the stowage of the injured cotton, on the return of the boat, two of plaintiff's witnesses swear that it was stowed in the hold of the boat, and one of them, that it was so stoewd against his remonstrances. On the other hand, some of the officers and hands swear, that it was stowed in the engine room, or in front of and near the boilers: where and how, they are not quite consistent among themselves. We shall not undertake to reconcile this testimony, nor decide which class of witnesses is entitled to be believed on this point.

We are of the opinion, from the testimony, that the short time the cotton was in the water in Lake Caddo was not the occasion of the damage to it. That if it had been immediately placed under cover, in a situation to dry, it would not have become injured to any great extent. That the injury was occasioned by exposure to the rain for several days following, and then being transported in this condition to the city, either in the engine room, by the boilers, or in the hold.

Whether, therefore, the captain had improperly obtained the cotton or not, is immaterial, because he was bound to that diligence, during the whole of the period of the transportation of the cotton, which the law exacts of the common

<div style="margin">BLOOKER<br>v.<br>WHITTENBURG.</div>

carrier. He was wanting in that diligence in leaving the cotton upon the bank of the lake, exposed to the weather and the almost daily rains, often common at this season of the year. He should have left a tarpaulin to cover the cotton during the rains, or provided other means of shelter. In the case of *Watts* v. *Steamer Saxon* we said : " The common carrier is bound to the most exact diligence, as much to avoid danger which may be reasonably apprehended in the future, as to rescue the property from present and imminent peril." 11 An. 45. We conclude that the defendant is responsible. See 8 An. 298, *Bond* v. *Frost*, and 12 An., *Steamer Jean Webre* v. *H. Kendell Carter & Co* ; Parson's Mercantile Law, 215 ; 12 Howard, 280.

We think the damages are proven to be $1245 50.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and it is now ordered, adjudged and decreed, that the plaintiff do have and recover judgment against the said defendant, for said sum of twelve hundred and forty-five dollars and fifty cents, with five per cent. interest thereon from the first day of June, 1854, until paid, and costs of both courts, and that the plaintiff have a privilege upon said steamboat, to secure the payment of the same.