154 So. 10

HARNISCHFEGER SALE CORPORATION

v. STERNBERG CO., Inc.

No. 32247.

Jan. 29, 1934.

On Application for Rehearing March 26, 1934.

See, also, 177 La. 373, 148 So. 440.

O'Niell & O'Niell, of New Orleans, for appellant.

Lines, Spooner & Quarles, of Milwaukee, Wis., and Theus, Grisham, Davis & Leigh, of Monroe, for appellee.

OVERTON, Justice.

This suit is one for the balance due on the purchase price of a drag-line machine. The machine is adaptable to the building of levees, and was purchased for that purpose. The price of it was $26,630, of which $3,000 was paid in cash. The balance, amounting to $23,-630, was divided into twenty monthly installments of $1,181.50 each, beginning October 15, 1930, with 6 per cent. yearly interest from August 1, 1930, represented by promissory notes, made by defendant, and secured by chattel mortgage on the machine.

The balance sued for is evidenced by the last fourteen notes of the series of twenty notes given. In suing, plaintiff obtained a writ of sequestration, under which the machine was sequestered. Later it was bonded by defendant.

The machine was ordered by defendant from its domicile in the state of Missouri, on one of plaintiff's printed forms, which defendant signed in the early part of August, 1930, and forwarded to plaintiff at its domicile in Wisconsin. Plaintiff accepted the order at its domicile a month later, and the order, in its accepted form, became the contract between the parties, and will hereafter be referred to as such. The chattel mortgage and promissory notes were executed by defendant at its domicile in Missouri, and the notes were made payable at the First Wisconsin National Bank, of Milwaukee.

In due course, the machine was shipped by plaintiff to defendant at Eudora, Ark., near which defendant was constructing a levee on the Mississippi river, under contract with the United States government. Over a year later,

the machine was sent by defendant to East Carroll parish, in this state, for the purpose of building a levee there for the United States, on the Mississippi. The machine had been in East Carroll for several months when defendant refused to make further payments, and the sequestration was run.

Both plaintiff and defendant were organized under the laws of Delaware, and are therefore foreign corporations. Defendant has not appointed an agent for service of legal process in this state, claiming that it was not under any legal obligation to do so, for the reason that, in no proper sense, is it, or has it, been doing business in this state.

Defendant filed a motion to quash the citation, the writ of sequestration, and the service thereof. This motion rests upon the ground that defendant has never done business in this state, and was not qualified to do business in it, and that service made on the secretary of state, as was done here, was invalid. Later defendant filed an exception to the jurisdiction of the court ratione personæ, grounded substantially upon the same grounds as was the motion to quash. Both exceptions were overruled.

Under the law of this state, a foreign corporation, before acquiring the right to do business therein, among other things, must designate in writing, and file with the secretary of state, the name of a person, residing in the parish where it has an established business, upon whom service of legal process may be made. Act No. 184 of 1924, p. 286. Where the foreign corporation, doing business in the state, has failed to comply with the law in this respect, or where the agent, if appointed, cannot be found, and where the corporation has not established and maintained an office in the state, the officer charged with the duty of making service is required, after diligent effort to serve the process, to make return to the court, stating the efforts made by him to secure service, and the reasons for his failure to secure it, when it becomes the duty of the judge or, in his absence, of the clerk to order service to be made on the secretary of state. Section 26, Act No. 267 of 1914, p. 532. Service, after the sheriff's return was filed, was made, under orders of court, on the secretary of state.

The complaint, as stated, is that, since defendant was at no time doing business in the state, it was not required to appoint an agent for service, and hence that the law did not authorize the service made.

Defendant, whose business was the construction of levees, has never entered into but one contract to build a levee in this state, and that contract is the one now mentioned.

■■ Ordinarily, the transaction of one piece of business in a state, or the entering into one contract therein, is not considered, under statutes similar to the present, as doing business in the state. 14 C. J. p. 1273; 12 R. C. L. § 48, title "Foreign Corporations." In this instance, however, the contract was such a one and of such duration as to require the making of numerous smaller contracts, such as those for the employment of labor and the repair of machinery.

The law hardly contemplated that a foreign corporation may undertake such a contract in this state without complying with its laws by appointing an agent for service

of process. We therefore hold that the service was valid.

■■ Defendant, however, urges that, assuming the validity of the service, nevertheless the court did not acquire jurisdiction in the case, because the cause of action did not arise in this state. The cause of action unquestionably arose outside of the state, and not with reference to business done therein. As to a cause of action so arising against a foreign corporation, whether it arises ex contractu or ex delicto, whether the foreign corporation has qualified to do business in this state or not, the general rule is that, as the cause of action arose out of the state, the courts of the state are without jurisdiction of it ratione materiæ. Hodges & Co. v. Pennsylvania Railroad Company, 171 La. 704, 132 So. 115; French v. Artistic Furniture Co., 173 La. 982, 139 So. 307. An exception exists, we think, pretermitting the right to attack under Act No. 220 of 1932, where the foreign corporation, doing business in the state, has brought property into it, burdened with a privilege or a chattel mortgage. Where the corporation has so brought property into the state, the privilege or the chattel mortgage may be enforced as is sought to be done here, by bringing the property before the court by means of a writ of sequestration, on obtaining citation of the defendant, but the judgment to be obtained can be only one in rem. Were this not true, when this suit was brought, which was in November, 1931, prior to the passage of Act No. 220 of 1932, it is doubtful whether a lien could have been enforced as to property brought into the state by a foreign corporation, without taking a circuitous route, causing great delay, which the law did not contemplate.

Therefore, whatever judgment may be here rendered in favor of plaintiff, if any, must be one strictly in rem. As we find that we have jurisdiction to that extent, it will be necessary to pass upon the merits of the case to ascertain whether plaintiff is entitled to a judgment at all.

It does not admit of question that the amount sued for is due, unless, as averred by defendant, plaintiff has breached its warranty by delivering to defendant a machine incapable of operating successfully with a 2-yard bucket for carrying dirt on a 60-foot boom. The contract of sale called for a standard 50-foot boom and a 10-foot extension. Such a boom appears to have been delivered as part of the machine. The property ordered and delivered is described as follows:

"1 Model 775-A Diesel Dragline, with standard 50-ft. boom and 10-ft. extension, and model E Kohler 1500 watt lighting plant, and such other equipment as is standard. Serial 4139."

The warranty stipulated in the contract is limited. Nothing is therein said touching the capacity of the machine. The warranty reads as follows:

"Third: We guarantee every part of the machinery, tools or equipment covered by this proposal to be of proper materials and first class workmanship, and agree to furnish, without charge, f. o. b. cars Milwaukee, Wisconsin, any part or parts which may prove defective under normal and proper use within ninety days after you begin to use the same. We will not be liable for the cost of repairs, alterations or replacements, or any

expense connected therewith, made or incurred by you, or your agents or servants, except upon written authority from our home office, nor will we be liable for any damages caused by defective materials, parts, machinery, tools or equipment in excess of one dollar ($1.00). Where claims for defects are made, the defective part shall be delivered to us prepaid, at Milwaukee, Wisconsin, for inspection, if so requested by us."

"Fourth: We shall not be liable for any general or special damages, if any, nor for implied warranties."

This warranty should be read in connection with paragraphs seven and nine of the contract, since proof of the particular warranty, if it exist, the breach of which is urged by defendant, is dependent on parol evidence. These paragraphs read as follows, to wit:

"Seventh: This proposal covers the entire agreement between the parties, and it is specifically understood that no prior writings or verbal negotiations or agreements form any part of this contract.

"Ninth: This proposal shall not become effective until accepted by you and executed and approved by the president, vice president, or secretary of Harnischfeger Sales Corporation, *and it is hereby further declared, agreed and understood that there are no understandings, representations, or agreements between the parties not herein expressed;* that same shall not be at any time modified, except in writing executed by you and approved by some one of the aforesaid officers of Harnischfeger Sales Corporation." (Italics ours.)

On the trial of the case, defendant undertook to establish by oral evidence that, as an inducement for it to purchase the machine, plaintiff represented to it that the drag line would operate successfully with a 2-yard bucket attached to a 60-foot boom, when, in truth and in fact, it would not so operate. Plaintiff objected to this evidence substantially upon the ground that parol evidence is not admissible for the purpose of altering, varying, or contradicting a written contract, in the absence of an allegation and proof of fraud, error, or duress.

The trial court at first sustained the objection, but later overruled it, and admitted oral evidence to show the existence of such a representation and warranty as a basis for the recovery of damages for the breach of the warranty to an extent necessary to defeat plaintiff's claim. In rendering judgment, however, the court, in effect, excluded the evidence, and rendered judgment for plaintiff, in accordance with the prayer of its petition, thus making the judgment one in personam and in rem.

Defendant's answer contains no averment of fraud, error, or duress. The oral representation or warranty, relied on, does not appear to be an independent collateral understanding or agreement. In fact, the contract says in clear and unambiguous language that there are none such, and it is not contended that this provision is the result of error, or was inserted erroneously, or by means of duress.

■ This suit having been brought in the courts of Louisiana, the rules of evidence pertinent therein are those of the forum,

which, in this instance, are the rules obtaining in this state. Blocker v. Whittenburg, 12 La. Ann. 410. With reference to the rule of evidence applicable here, article 2276 of the Revised Civil Code of Louisiana provides that:

"Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."

■ This rule does not exclude parol evidence, where the necessary allegations are made, to show fraud, error, or duress, in the confection of the contract, but, as said, no such allegations are made here. Angomar v. Wilson, 12 La. Ann. 857; Cary v. Richardson, 35 La. Ann. 505, 509.

■ Defendant, as heretofore said, however, takes the position that the representation upon which he rests his claim of warranty was made as an inducement for it to purchase, and that, such being the case, it has the right to establish by parol evidence the representation as a basis for its claim of warranty. Were we to hold that evidence of the representation was admissible, the effect would be to contradict flatly, so far as relates to warranty, the written contract, which in unambiguous language recites: "It is hereby further declared, agreed and understood that there are no understandings, representations, or agreements between the parties not herein expressed," by making it possible to show that there were such understandings. The effect of the ruling would be to make the contract a mere scrap of paper to be disregarded whenever one's interest so dictates, and to cast aside the means provided to avoid the uncer-

tainty involved in establishing contracts by parol.

A contention similar to the one made here was made in Hafner Manufacturing Co. v. Lieber Lumber & Shingle Co., 127 La. 348, 355, 53 So. 646, 649. There the defendant argued that the purpose of the parol evidence offered was not to contradict the written contract, but to show an independent collateral one, made contemporaneously with the written one, *and which was the cause and principal motive that induced the defendant to enter into the principal contract.* The court, after ruling that the oral contract was not an independent collateral one, said, with reference to the plea of inducement, that: "If, after having drawn up a writing for the purpose of serving as complete evidence of their contract, parties were allowed thus to modify the contract by oral evidence, it is not seen what would become of the statute, article 2276, Civ. Code." This statement is directly in accord with the views expressed by us here, and supports plaintiff's contention that the oral evidence offered is not admissible.

Leaving Louisiana, at least for the time being, to consult the jurisprudence in some of the other states, it may be observed that in the case of Edward T. Kelly Co. v. Von Zakobiel, 168 Wis. 579, 171 N. W. 75, where the contract contained a clause reading, "This contract is irrevocable, and no conditions affecting it not embodied herein exist," the court said in passing upon the right to offer parol evidence to contradict it that:

"Counsel for defendant calls our attention to the rule of law that permits the entire contract to be shown, though a part of it

rests in parol. That rule is operative only when there is no vital contradiction between what is expressed in the writing and the oral agreement. But this contract says it is entire. To prove the contrary would be to contradict the writing. We are also reminded that it may be shown by parol testimony that an instrument was given on condition, and that such condition has not been satisfied. No doubt such is the rule as to writings that are consistent with such proof. But this instrument says it is irrevocable, and that no conditions exist not expressed therein. And finally it is urged that a collateral agreement, which was the inducement for entering into the written contract, may be shown by parol. No doubt it may in a proper case, but not where the written contract expressly negatives any collateral agreement, and no claim is made that the signature thereto was obtained by reason of duress, fraud, mistake, or excusable neglect.

"The law seeks to protect both parties to a written contract. Hence, when a writing speaks plainly, and declares itself to be the entire contract, and is complete in itself, when it negatives prior or contemporaneous oral agreements, when it says there are no conditions existing not expressed therein, and that it is irrevocable, it must be held to contain the entire agreement between the parties, or else written contracts would become mere scraps of paper, subject to the same infirmities of self-interest, forgetfulness, and misunderstanding that attend oral agreements. It is for the purpose of avoiding these infirmities that written contracts are entered into, and it is in the furtherance of justice and honesty that the law declares that what

a man has plainly asserted under his own signature he should not be permitted to deny, except upon proof of duress, fraud, mistake, excusable neglect, or some other adequate cause. We have no such case here."

In Hill & MacMillan, Inc., v. Taylor, 304 Pa. 18, 155 A. 103, 75 A. L. R. 1022, it was held that the vendee of a locomotive under a contract that all prior communications between the parties, either verbal or written, not therein contained, are withdrawn and annulled, cannot rely upon oral representations by the president of the company, making the sale, that the locomotive would do the work for which it was purchased, as a defense in a suit to recover the purchase price.

Returning to the jurisprudence of this state for a moment, the case of Davies v. William W. Bierce, Limited, 114 La. 675, 38 So. 488, 493, though relied on by defendant, does not support, in our view, defendant's position. In the opinion therein the court, in reference to evidence to show inducements, said:

"The general rule is well defined, with exceptions broadly delineated in all the text-books, illustrated by almost innumerable exceptions.

"The test of admissibility in such cases is whether the evidence offered [to show the oral representation] tends to alter, vary, or contradict the written contract, or only to prove an independent, collateral fact about which the written contract was silent. In the former case the testimony is inadmissible; in the latter it is competent and proper."

The oral evidence tendered in this case to show the inducement to purchase is in direct

conflict with the written contract, and therefore, under the foregoing excerpt, is inadmissible, but the excerpt scarcely arises to the importance of precedent, for the case seems to rest upon the finding that the contract, which consisted of a series of letters, was incomplete, and therefore parol evidence was admissible to make it complete. For this reason we have not cited the case as authority.

We have examined the cases cited by defendant from other jurisdictions, some of which we do not consider pertinent, and the remaining, though they have some pertinency, do not accord with what we deem the better view, the one more in accord wtih the laws of this state, which we have announced above.

The trial court, as indicated supra, rendered judgment for plaintiff as prayed for. The judgment should be amended so as to make it one in rem for the reasons stated above.

The judgment appealed from is amended by changing it from one in personam to one in rem, and, as amended, it is affirmed, plaintiff to pay the costs of appeal.

O'NIELL, C. J., absent.

On Application for Rehearing.

PER CURIAM.

In the brief filed in support of the plaintiff's application for a rehearing, it is argued that the defendant submitted to the jurisdiction of the district court by releasing the sequestered property on a forthcoming bond. The decisions cited in support of the argument are Williams v. Gilkeson-Sloss Commis-

sion Co., 45 La. Ann. 1013, 13 So. 394; Hollingsworth v. Atkins Bros., 46 La. Ann. 515, 15 So. 77; and First National Bank v. Johnson, 130 La. 288, 57 So. 930. But, in each of the cases cited, the court acquired jurisdiction by an attachment of the property of a nonresident; and the only question that the court was called upon to decide, or did decide, was that the defendant had submitted to the jurisdiction of the court, ratione personæ, by releasing the property on a bond and by thus substituting a personal obligation for the property. It is not necessary to say now whether those decisions should have unlimited application to cases where the court has acquired jurisdiction over a nonresident by attachment. It is sufficient to say that this is not such a case. Here the court's jurisdiction was limited to the right to entertain a foreclosure of a chattel mortgage, either via executiva or via ordinaria. The jurisdiction of the court was not acquired by virtue of the sequestration of the property, but by virtue of the mortgage and resultant lien on the property. The sequestration of the property was only a conservatory measure, which, unlike an attachment of the property of a nonresident, did not confer jurisdiction. We found, in deciding this case, that the court did not have jurisdiction to render a personal judgment against the defendant, because the cause of action, which was against a foreign corporation, arose in another state, and was not connected with business done by the defendant in this state. In such a case the dissolving of the conservatory writ of sequestration on a forthcoming bond obliges the defendant to return the property or be answerable for the value, but does not confer juris-

diction ratione personæ, because the writ of sequestration itself does not confer jurisdiction in any respect. See Panstwowe Zaklady Graviozne v. Automobile Insurance Co. (D. C.) 36 F.(2d) 504, 505; Louisville & Nashville Railroad Co. v. Deutsche Dampfschiffarts-Gesellschaft (D. C.) 43 F.(2d) 651. We considered all of this in our original consideration of the case, but did not deem it necessary to discuss it, because of the difference between the writ of sequestration and an attachment of the property of a nonresident, with regard to conferring jurisdiction upon the court.

ST. PAUL, J., absent.