447 So.2d 511 (1984)
Ruth Meisel, Wife of and Leon MEISEL
v.
NATAL HOMES, INC., et al.
No. CA-1099.
Court of Appeal of Louisiana, Fourth Circuit.
February 9, 1984.
Richard D. Faulkner, New Orleans, for plaintiff-appellee.
Michael A. Lombard, Metairie, for defendant-appellant.
Before GULOTTA, GARRISON and LOBRANO, JJ.
GULOTTA, Judge.
In this action by homeowners for defective construction of their residence, the sole issue confronting us is whether an agent of the defendant building company is personally liable.
Plaintiffs Ruth and Leon Meisel sued Natal Homes, Inc. and Ronnie Natal for damages from various construction defects in a home purchased from Natal Homes, *512 Inc. After trial on the merits, the court rendered a $5,078.00 judgment in favor of the Meisels together with $2,650.00 attorney's fees and against both defendants in solido. We affirm that part of the judgment rendered against Natal Homes Inc. We reverse and set aside that part holding Ronnie Natal individually liable to the plaintiffs.
Although not contesting the liability of the defendant corporation or the quantum of damages, Ronnie Natal appeals the judgment insofar as it casts him personally liable. According to Natal, he bears no individual responsibility to plaintiffs because he acted at all times in the capacity of agent for the corporate defendant, and his status was clearly and unequivocally made known to them.
Ronnie Natal was vice-president of Natal Homes, Inc. during the relevant time period. He received a weekly salary as the company's "superintendent", but owned no stock in the corporation.
In the March 14, 1979 agreement to purchase the lot and home, Ronnie Natal signed: "Ronnie Natal V.P. Natal Const. Co. Inc." A blueprint of the residence bore the inscription "NATAL HOMES". Meisel testified that he purchased the home from "Natal Homes, Inc."
Plaintiffs subsequently signed an act of sale with Natal Homes, Inc. A statement of closing costs, dated June 29, 1979, in connection with the passing of title, likewise bore the inscription "Natal Homes, Inc."
During construction and after moving into the home, plaintiffs orally complained to Ronnie Natal of a number of defects. Their dissatisfaction was expressed in a July 14, 1979, letter addressed to "Natal Homes, Inc. State Contr. Lic. 9151", with the salutation "Dear Ronnie". In this letter, the Meisels took exception to the workmanship at the residence and stated "... to this time we are holding your company responsible, for damages and interest...." (Emphasis ours)
Plaintiffs subsequently complained to the Better Business Bureau, which attempted to have the parties arbitrate their differences. An "Arbitration Agreement" drafted by the BBB lists "Natal Homes, Inc." and "Leon Meisel" as the parties. Arbitration never took place, however, and the instant litigation followed.
To avoid personal liability to a third person, an agent has the burden of proving he contracted not individually but as an agent, by disclosing his capacity and his principal's identity to the other party. LSA-C.C. Arts. 3012 and 3013: Duckworth-Woods Tire Service, Inc. v. Smith & Johnson (Shipping), Inc., 430 So.2d 207 (La.App. 4th Cir.1983); Ruckman v. Mashburn, 428 So.2d 531 (La.App. 4th Cir.1983); and Regency Elec., Inc. v. Verges, 360 So.2d 252 (La.App. 4th Cir.1978). Express notice of the agent's status and the principal's identity is unnecessary, however, if acts and circumstances surrounding the transaction demonstrate affirmatively that the third person should be charged with notice of the relationship. Duckworth-Woods Tire Service, Inc. v. Smith & Johnson (Shipping), Inc., supra; Ruckman v. Mashburn, supra; J.T. Doiron, Inc. v. Lundin, 385 So.2d 450 (La.App. 1st Cir. 1980).
Applying these precepts to the instant case, we conclude that Ronnie Natal successfully carried the burden of proving his status as a corporate agent.
Significantly, Natal signed the agreement to sell the property to the Meisels as a corporate "vice president", thereby expressly revealing his status as an agent. From this signature alone, the Meisels should have realized they were dealing with a construction company and not the individual acting as its representative.
Assuming no express disclosure took place, however, the circumstances of the dealings between the parties provided sufficient indicia of Natal's agency status to put the Meisels on notice. Aside from the agreement to purchase, the house plans of the residence bear the inscription of Natal *513 Homes. Perhaps the most telling circumstance, however, is the Meisels' own letter of complaint to Natal Homes, Inc., in which they stated, "... we are holding your company responsible...." This evidence, coupled with Natal's undisputed testimony that he owned no stock in the corporation and was acting as its compensated vice-president, leads us to conclude that the trial judge erred in holding Natal individually liable to plaintiffs.
We are not persuaded by plaintiffs' argument that Natal's promises to correct the defects in the home constituted a "personal guarantee" obligating him individually. Although plaintiffs testified that Natal had repeatedly assured them that he would take care of the problems, it is apparent from the context of the complaints and Natal's responses that he was speaking in his role as corporate agent and executive officer of Natal Homes, Inc. We do not interpret his assurances to rectify the defects as his personal guarantee of individual performance. Nor can we say his attempts to satisfy plaintiffs constituted deliberate deception or fraud. See Automatic Coin Enterprises v. Vend-Tronics, 433 So.2d 766 (La.App. 5th Cir.1983). Under these circumstances, he is not personally liable.[1]
The Meisels further argue that the corporate defendant is "apparently without assets" and that Natal individually should not be permitted "to hide behind" the "judgment proof" corporation to avoid liability. Significantly, however, the record does not indicate the financial status of the corporate defendant, nor is its solvency relevant to the legal question involved in this appeal. Although we are sympathetic to the frustration a victorious plaintiff might feel in obtaining a "paper judgment", the insolvency of a corporate defendant does not provide a legal basis for holding its agent personally liable, where the plaintiffs have notice of the agent's status and he conforms to it at all times.
Accordingly, the judgment, insofar as it casts Ronnie Natal liable individually to plaintiffs, is reversed and set aside. In all other respects, the judgment is affirmed.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] See also LSA-C.C. Arts. 3035 and 3039, dealing with suretyship.