538 So.2d 663 (1989)
Carey Eugene CHEEK
v.
UPTOWN SQUARE WINE MERCHANTS, W.F., INC., and Herman D. Colomb, M.D.
No. 88-CA-0996.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1989.
Rehearing Denied March 15, 1989.
*664 L. Kevin Coleman, Trapolin & Coleman, New Orleans, for plaintiff.
J. William Vaudry, Jr., Patrick M. Gusman, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, for defendant.
Before GARRISON, BARRY and ARMSTRONG, JJ.
BARRY, Judge.
Sometime in late 1983 architect Carey Eugene Cheek and Dr. Herman D. Colomb, a psychiatrist, signed a contract for Cheek to provide architectural work on a concession project at the World's Fair. The agreement provides for Cheek to receive a 5% interest in Uptown Square W.F., Inc. (the entity doing the concession project), plus 7.5% of construction costs for additional services, consultants, reimbursable expenses and other compensation factors.
Invoices for Cheek's fees pursuant to the contract were never paid. Invoice # 1 (dated April 2, 1984) is for $10,928 and invoice # 2 (dated November 7, 1984) is for $15,874. Invoice # 2 reflects the total due amounting to $14,735.30 plus interest of $1,138.81 to that date on invoice # 1. Cheek sued Dr. Colomb and Uptown Square for the total fees allegedly due under the contract, $14,735.30 plus interest of $1,580.87 through January 1985, and interest of 1½% per month thereafter until the principal is paid. Both defendants claimed the contract does not reflect their agreement with Cheek; rather, they say Cheek agreed to work in exchange for 5% of the Uptown Square corporation. The trial court dismissed plaintiff's petition with prejudice, each party to pay their costs.
Dr. Colomb identified his signature on the architectural contract. He testified that Cheek brought the contract to his office, *665 and he signed it between appointments. Dr. Colomb got the impression that the contract had to be signed because of Cheek's association with Sizeler & Associates, an architectural firm. Dr. Colomb claims he did not read the contract. He admitted receiving a copy, but could not find it.
Dr. Colomb examined the contract at trial and said the provision delineating Cheek's compensation was different from the oral agreement they had made.[1] He acknowledged receipt of Cheek's April 2, 1984 invoice # 1 and said he had prepared a check for payment but it was never given to Cheek.
Mr. and Mrs. Cheek testified they had a conversation with Dr. Colomb in late October 1983 concerning Cheek receiving 5% of the corporation plus 7½% of the construction costs in lieu of a 12½% straight fee. This testimony is corroborated by Page 9 of the contract. Both stated Dr. Colomb was to present this new fee arrangement to the other shareholders for their approval. Cheek testified that Dr. Colomb told him the other shareholders had given their approval.
Mrs. Cheek testified she delivered the contract to Dr. Colomb at his office sometime near the end of October or beginning of November 1983. She said Dr. Colomb looked through the contract, signed it, and she gave him a copy.
The testimony of Mr. and Mrs. Cheek and Dr. Colomb indicates the date on the front of the contract was earlier than the date it was actually signed.
The trial court's reasons for judgment state:
The court finds that the signature on the last page ... is that of Dr. Colomb. However, the Court finds that page 9 of the agreement does not correctly state the arrangement between Mr. Cheek and the corporation as per the agreement with Dr. Colomb, i.e., that Mr. Cheek was to receive a 5% interest in the corporation for his services and not a fee of 7½%.
Cheek argues (1) the trial court erred by finding that the written contract does not reflect the true agreement between the parties and (2) Dr. Colomb's alleged failure to read the contract is no defense. We agree.
At the time the contract was executed, La.C.C. Art. 2276 (1870)[2] provided:
Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.
However, parol evidence may be used against a writing to show error, fraud, or duress. Harnischfeger Sale Corp. v. Sternberg Co., 179 La. 317, 154 So. 10 (1934); 1984 Revision Comments (b) to La.C.C. Art. 1848.
Neither fraud nor duress are alleged here. Rather, the argument appears to simply be that the contract's compensation provision is erroneousthat it does not reflect what Dr. Colomb remembers it to be.
It is well settled that a party to a contract is bound by a contract clause even though he lacked knowledge of its existence, or has failed to read it. (citations omitted)
Gonsalves v. Dixon, 487 So.2d 644, 645 (La.App. 4th Cir.1986). "[O]ne who signs an instrument without reading it has no complaint." Tweedel v. Brasseaux, 433 So. 2d 133, 138 (La.1983). See also Guaranty Bank & Trust Co. v. Jones, 489 So.2d 368 (La.App. 5th Cir.1986).
*666 Dr. Colomb may not complain that the contract does not reflect the true agreement only because he did not read it. He can not use parol evidence as his defense to show an allegedly different agreement was made. The trial court manifestly erred by finding an oral agreement pre-empted the unambiguous terms of this contract. Cheek is entitled to the agreed upon additional 7½% fee.
Having found that the written contract is enforceable we now consider Dr. Colomb's alternative arguments which were not reached by the trial court.
Dr. Colomb urges that he signed the contract in a representative rather than a personal capacity.
To avoid personal liability to a third person, an agent has the burden of proving he contracted not individually but as an agent, by disclosing his capacity and his principal's identity to the other party.
Meisel v. Natal Homes, Inc., 447 So.2d 511, 512 (La.App. 4th Cir.1984).
The American Institute of Architects form states on the first page that it is between Uptown Square Wine Merchants, Inc. W.F.,[3] Dr. Herman Colomb, M.D., and Carey Eugene Cheek, A.I.A. Dr. Colomb's address is below his name. The last (signature) page is styled:[4]
OWNER
 Uptown Square Winery, W.F., Inc.
 Uptown Square Winery, W.F.,Inc. &
 Dr. Herman Colomb, M.D.
 1421 Napoleon Avenue
 New Orleans, Louisiana 70115
By /s/ Herman Colomb
Dr. Colomb does not qualify or specify the capacity in which signed on the last page, nor does the first page indicate his connection with Uptown Square.
Cheek testified that Dr. Colomb was listed as the owner because he (Cheek) was concerned about the temporary tenure of Uptown Square as a Subchapter S corporation. He explained that "owner" in the AIA contract referred to the party responsible for the contract. He felt as though he was working for Dr. Colomb. He claimed that he and Dr. Colomb spoke of Dr. Colomb's personal liability which Dr. Colomb agreed to, and he felt Dr. Colomb and Uptown were equally liable on the contract.
Dr. Colomb denied that he discussed or agreed to his personal responsibility for corporate debts. He claims he never noticed the ampersand between Uptown and Dr. Colomb on the signature page. Dr. Colomb had operated his psychiatric practice in corporate form for about ten years and was president of the corporation.
There is no evidence Dr. Colomb ever disclosed he was contracting only as a representative of Uptown Square. Rather, his signature on the contract was without qualification and appears on behalf of Uptown Square as well as himself individually. Other documents denoting Uptown Square as owner cannot change the status of Dr. Colomb's signature on the contract. Importantly, there was no effort by Dr. Colomb to limit his personal liability. Nor is there any ambiguity in Dr. Colomb's status as a signatory. Our only conclusion is that Dr. Colomb intended to be personally liable on the contract.
We now turn to whether Dr. Colomb's liability is in solido with Uptown. La.C.C. Art. 2077[5] (1870) provided:
Where there are more than one obligor or obligee named in the same contract, the obligation it may produce may be either several or joint or in solido, both as regards the obligor and the obligee.
"When several persons join in the same contract to do the same thing, it produces a joint obligation on the part of the obligors." La.C.C. Art. 2080 (1870) (restated by La. C.C. Art. 1788 (1984)). *667 La.C.C. Art. 2086 (1870)[6] provided:
In a suit on a joint obligation, judgment must be rendered against each defendant separately, for his proportion of the debt or damages, if the suit resolves itself into damages. If the suit be for a specific performance, each defendant may be compelled to execute his proportion of the obligation, if the nature of the case permit and justice require it. The proportion, meant by this and the succeeding articles, is calculated by the number of the obligors, each one answering for an equal part, unless the parties have expressed a different intention.
We find no basis to hold Uptown Square and Dr. Colomb solidarily liable.
Dr. Colomb contends that Cheek is not entitled to the fee because of a failure of consideration. He notes Cheek's failure (1) to require a bond by the contractor, (2) to verify construction costs, and (3) to assist Uptown Square in negotiating the construction contract. We do not find any defect in Cheek's performance of the contract as to its principal cause, nor has Dr. Colomb established how such a defect would reduce Cheek's recovery. We note that Dr. Colomb admitted in his earlier deposition that he did not have any complaint about Cheek's services. There is no merit in the contention that there was a failure of consideration.
Lastly, Dr. Colomb contends that Cheek failed to prove the underlying construction costs to establish his fee. John H. Wright, president of the company which performed the construction, identified the invoices he sent to Dr. Colomb. The invoices were introduced without objection. Wright testified that he did not receive an objection to any of the invoices.
Under these circumstances, we find that Cheek established the basis for his fee based on the construction costs.
Dr. Colomb does not dispute Cheek's entitlement to other portions of Cheek's invoice.
The judgment of the district court is reversed and judgment is hereby rendered in favor of Carey Eugene Cheek and against Dr. Herman D. Colomb and Uptown Square W.F., Inc., each for 50% of the principal amount of $14,735.30 plus interest through January 1985 of $1,580.87, plus interest on the principal amount from January 1985 at 1½% per month until paid, and for all costs.
REVERSED.
RENDERED.
*668
AGREEMENT
made as of the 15th day of Septmeber in the year of Nineteen
Hundred and Eighty three
BETWEEN the Owner: UPTOWN SQUARE WINE MERCHANTS, INC. W.F.
 DR. HERMAN COLOMB, M.D.
 1421 Napoleon Avenue
and the Architect: New Orleans, Louisiana 70115
 CAREY EUGENE CHEEK, A.I.A.
For the following Project: Louisiana License # 3088
(Include detailed description of Project location and scope.)
 Renovations to and construction of the interior space
 assigned to Uptwon Square Winery, W.F., Inc. at the onsite
 location F-8, Church Building, Fulton at Julia Street. Approximate
 square footage, 2000 SF. (Site location under negotiation)
 Project scope includes other such sites located onsite
 at the Louisiana World Exposition as directed by the Owner as
 additional sites or alternate sites.
The Owner and the Architect agree as set forth below.

*669
Hourly Charge of Direct Time at rates listed:
 Principal $50.00
 Draftsman 20.00 (times 2.75 Overhead multiplier)
 Secretarial 8.00 (times 2.75 Overhead multiplier)
 Consulting Engineer Disrect Cost (times 1.5)
---------------------------------------------------------------
Percentage of Construction Costs:
 For all constuction of necessary fixtures, partitions,
 mechanical and electrical systems, structural modifications,
 finish matrials to the assigned tenant space at a rate of
 TWELVE AND ONE HALF PERCENT.* (Compensation basis changed to
 percentage of construction costs when square footage was increased
 to approximately 4000 SF.)
 *Carey E. Cheek, as Architect, agrees to accept
in lieu of the percentage shown (12.5%), the FEE will be at a
rate of SEVEN AND ONE HALF PERCENT (7.5%) plus a PERCENTAGE
OWNERSHIP of Uptown Square Winery, W.F., Inc. of FIVE PERCENT (5.0%)
as shown in Chapter S agreement.
 Cumulative perce:
Schematic Design Phase: fifteen percent (15%) percent ( 15%)
Design Development Phase: twenty percent (20%) percent ( 35%)
Construction Documents Phase: forty percent (40%) percent ( 75%)
Bidding or Negotiation Phase: five percent ( 5%) percent ( 80%)
Construction Phase: twenty percent (20%) percent (100%)
(a) Payment of invoices shall be made within fifteen (15) days
 after receipt by the Owner unless other agrangement is made.
*670 
NOTES
[1] Page 9 of the contract, relevant to compensation, is reproduced in the attached appendix.
[2] By Acts 1984, No. 331, § 1 Article 2276 was reembodied in La.C.C. Art. 1848 to provide:

Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.
According to 1984 Revision Comment (a) to Article 1848, though the article is new, it reproduces the substance of the old article and incorporates jurisprudentially recognized exceptions.
[3] The last (signature) page has the "W.F." before Inc.
[4] The first and last pages are reproduced in the appendix to this opinion.
[5] La.C.C. Art. 1786 enacted by Acts 1984, No. 41, § 1 restates this rule.
[6] By Acts 1984, No. 331, § 1 the substance of Article 2086 was reproduced in La.C.C. Art. 1789 to provide:

When a joint obligation is divisible, each joint obligor is bound to perform, and each joint obligee is entitled to receive, only his portion.
When a joint obligation is indivisible, joint obligors or obligees are subject to the rules governing solidary obligors or solidary obligees.
Under the old law, divisibility of an obligation had little practical import. The new law "makes the categories of divisible and indivisible obligations meaningful and functional." 1984 Revision Comment (d) of La.C.C. Art. 1789.