649 So.2d 123 (1995)
Chris D. CASTEN, Plaintiff-Appellee,
v.
J. Hardeman CORDELL and Robert E. Powell, Defendants-Appellants.
No. 26487-CA.
Court of Appeal of Louisiana, Second Circuit.
January 25, 1995.
*124 Donald L. Kneipp, Monroe, for appellant.
Jack H. Kaplan, Shreveport, for appellee.
Before LINDSAY and WILLIAMS, JJ., and CULPEPPER, J. Pro Tem.
*125 CULPEPPER, Judge Pro Tem.
Plaintiff, Chris D. Casten, brought suit against Robert E. Powell and J. Hardeman Cordell for breach of a consultation agreement and for rescission for lesion of the transfer by correction deed of a parcel of property. The trial court found defendants liable "jointly and individually" to the plaintiff for $45,000 for breach of the consultation agreement, but denied rescission of the sale of immovable property. The defendants appealed, and plaintiff answered the appeal.
For the following reasons, we reverse the judgment insofar as it holds J. Hardeman Cordell liable for breach of the consultation agreement; we find liability for the consultation agreement by Robert E. Powell; and, we affirm that portion of the judgment denying rescission of the transfer of immovable property for lesion.

FACTS
During the late 1980s, appellee, Chris D. Casten, owned and operated a restaurant known as "Casten's Restaurant" on North Market Street in Shreveport. In 1989, Casten had financial difficulties; the IRS filed a tax lien; and a bank started foreclosure proceedings. As a result of these difficulties, Casten employed Gus Mijalis as his real estate agent and they entered into negotiations to sell the restaurant to defendants, Robert E. Powell and J. Hardeman Cordell for $375,000. Powell was in the business of operating convenience stores in the Shreveport area through his corporation, C-Store Services, Inc., d/b/a Kwik Trip Food Stores. Cordell, of Monroe, Louisiana, was a gasoline distributor through his corporation, Central Oil and Supply Corporation. Powell and Cordell already owned several properties in indivision, and they became interested in the Castens property location on Market Street. Ultimately, these negotiations led to Casten's execution of a dation transferring the restaurant property to the bank which, in turn, sold the property to Cordell and Powell in their individual names.
At the closing of the sale, a one paragraph consultation agreement, written on letterhead bearing the name of Robert Powell, was also entered between Powell and Casten. The agreement was written by Gus Mijalis and bears the signatures of Powell and Casten, but not Cordell. Cordell's name is only briefly mentioned in the agreement. The entire agreement reads as follows:

ROBERT POWELL

9706 ST. VINCENT

SHREVEPORT, LA 71106

July 7, 1989
It is hereby agreed that Mr. Chris Casten will be retained as a consultant for Kwik Trip Food Stores for a period of thirty-six (36) months for a fee of $2,500.00/month beginning November 1, 1989 through October 31, 1992, provided Robert Powell and Hardeman Cordell purchase the Casten property located on the corner of North Market and Aero Drive as specified in the attached sales agreement. Mr. Casten further agrees to a covenant not to compete during this period within a two (2) mile radius of this location. The beginning date of this contract will be the actual date of opening, but no later than November 1, 1989.
 Sincerely,
 /s/ Robert Powell
 Robert Powell
AGREED TO THIS 7
DAY OF July, 1989.
BY: /s/ Chris D. Casten
 Chris D. Casten
The agreement was honored on November 1, 1989, and through January 1, 1991. The payments which Casten received were drawn on the checking accounts of C-Store Services, Inc. and/or Kwik Trip, but never on the personal accounts of either Powell or Cordell.
In early 1990, Casten was again approached by Gus Mijalis and asked to sign an act of correction deed for portions of the property that were not covered in the sale. Mijalis told Casten that a portion of the parking lot had been erroneously omitted from the act of sale. Casten signed the act *126 of correction which included lots 41, 42, 43 and 44 of the Tacony Subdivision.
When payments on the consultation agreement for February and March of 1991 were not made, Casten made amicable demand on Powell and Cordell but to no avail. On April 2, 1991, Casten filed this action praying for judgment against the defendants for breach of the agreement and damages. He also sought rescission for the transfer of the Tacony Subdivision lots set out in the act of correction based on lesion, or in the alternative, a reasonable compensation therefor.
In its reasons for judgment, the trial court found that Powell and Cordell were each individually liable to make all payments required by the consultation agreement. The trial court grounded its decision on the finding that the convenience store at the North Market location was operated by a partnership composed of Powell and Cordell. The judgment signed was for $45,000.00 plus legal interest from the date of judicial demand. The remainder of Casten's demands were rejected.
Cordell took a suspensive appeal and Powell a devolutive appeal. They contend that the trial court erred in ignoring the corporate identity of C-Store Services, Inc. and holding each of them personally liable under the terms of the agreement. In the alternative, they argue that the trial court erred in holding them solidarily liable for the obligation, since LSA-C.C. art. 2817 expressly provides a partner is bound only for his virile share of a partnership debt.
Casten answered the defendants' appeal contending that the lower court erred in not awarding damages as prayed for in his petition, in not applying the principles of lesion to void the act of correction or give reasonable compensation therefor, and in not awarding a reasonable attorney's fee.

DISCUSSION

CONSULTATION AGREEMENT
LSA-C.C. art. 1906 defines a contract as an agreement by two or more parties whereby obligations are created, modified, or extinguished. Where the words of a contract are clear, explicit, and lead to no absurd consequences, the meaning and intent of the parties must be sought within the four corners of the document and cannot be explained or contradicted by parol evidence. Billingsley v. Bach Energy Corp., 588 So.2d 786 (La.App. 2d Cir.1991). Furthermore, a suspensive condition is defined in LSA-C.C. art. 1767 as follows:
A conditional obligation is one dependent on an uncertain event.
If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive.
If the obligation may be immediately enforced but will come to an end when the uncertain event occurs, the condition is resolutory.
The consultation agreement contains a suspensive condition that the property be sold to Cordell and Powell. This event subsequently occurred, making the agreement an enforceable contract. The real issue presented is who is liable for performance of the contract now that it has been breached.
Defendants contend the contract clearly states Casten would work as a consultant for Kwik Trip Food Stores, and that since it is owned by C-Store Services Inc., only that corporation is liable to Casten under the contract. The trial court found that the operation of the business on the property acquired from Casten was by a partnership composed of Powell and Cordell, and therefore both are liable on the consultation contract.
The first fatal flaw in the trial court judgment is that no such partnership was named as a party defendant. LSA-C.C.P. art. 737 provides:
A partnership has the procedural capacity to be sued in its partnership name.
The partners of an existing partnership may not be sued on a partnership obligation unless the partnership is joined as a defendant.
The partnership, if any, is an indispensable party. LSA-C.C.P. art. 641. Although no exception of nonjoinder of an indispensable party was filed by defendants, this objection may be noticed by the appellate court.
*127 LSA-C.C.P. art. 927. See also the revision comments under LSA-C.C. art. 2817.
Moreover, the evidence does not prove a partnership. The record shows that C-Store Services, Inc. d/b/a Kwik Trip was owned by Powell. It operated the restaurant and convenience store under a lease from Powell and Cordell individually. Central Oil and Gas Supply Corporation was owned by Cordell, and it sold gas to C-Store Services, Inc. d/b/a Kwik Trip. Cordell had nothing to do with the management of the restaurant and store on Market Street, nor was he a shareholder or officer or C-Store Services, Inc. No testimony was elicited to establish that Cordell played any part in the Market Street operation other than as co-owner of the land and owner of the company that supplied gasoline to Kwik Trip.
Casten next argues there was some form of agency relationship between Cordell and Powell. During the course of the trial, no evidence was presented to establish that Powell was expressly granted authority to represent Cordell in the consultation agreement. Therefore, Casten had the burden to establish that Powell had apparent authority. Apparent authority is a jurisprudentially created concept of estoppel which operates in favor of a third person and binds the principal for the unauthorized acts of an apparent agent. To trigger the concept of apparent authority, the third party must prove that the principal gave the third party reason to believe that the agent had authority to act on the principal's behalf with respect to the particular action taken and that the third party reasonably relied upon the manifested authority of the agent. Boulos v. Morrison, 503 So.2d 1 (La.1987). Casten testified Mijalis told him that Powell and Cordell were partners, but Mijalis did not testify, and there is no evidence of any action by Cordell to cause Casten to believe that Powell was Cordell's partner or agent in the operation of the convenience store. Casten never even met Cordell until after payments were ceased under the consultation agreement, and Casten went to Monroe seeking payment.
Taking full cognizance of the constraints on our power to review findings of fact set out in Rosell v. ESCO, 549 So.2d 840 (La. 1989), and more recently in Stobart v. State, through DOTD, 617 So.2d 880 (La.1993), we find that the trial court's conclusion that Cordell and Powell had a partnership, joint venture or agency relationship, such that Cordell is liable for the consultation agreement, was clearly wrong.
After finding that Cordell is not liable for performance of the consultation agreement, we must now address Powell's contention that the contract is C-Store Services' corporate obligation. Under Louisiana law, an agent is liable to those with whom he contracts on behalf of his principal when he has bound himself personally by entering into an agreement without disclosing the identity of his principal, and the agent has the burden of proving he disclosed his capacity and the identity of his principal if he wishes to escape personal liability. LSA-C.C. arts. 3012, 3013; You'll See Seafoods, Inc. v. Gravois, 520 So.2d 461, 462 (La.App. 5th Cir.1988), stay denied, writ denied.
To avoid personal liability to a third person, an agent has the burden of proving he contracted, not individually, but as an agent, by disclosing his capacity and his principal's identity to the other party. Meisel v. Natal Homes, Inc., 447 So.2d 511, 512 (La.App. 4th Cir.1984). Powell does not qualify or specify the capacity in which he signed the agreement, nor does he indicate his connection with C-Store Services or Kwik Trip. Moreover, the letterhead implies that the agreement is a personal one because of the personal letterhead. Additionally, we note that the record is void of any evidence that Casten was put on notice that he was dealing with a corporation, instead of Powell individually, when he signed the consultation agreement. Powell did not sign the contract as an officer of C-Store or official agent thereof, nor did he produce any corporate resolutions or written authorization to indicate to Casten that he was acting on behalf of the corporation. Therefore, we find that Powell personally obligated himself for performance of the consultation agreement and is liable for its breach.

*128 ACT OF CORRECTION

Casten answered the defendants' appeal contending that there was no consideration for the execution of the act of correction. Casten argues that originally, they only agreed to buy the building and fixtures but not the parking lot (the Tacony Subdivision property described in the act of correction). However, Casten readily admitted during his testimony that when he agreed to sell the restaurant, he intended the sale to include the parking lot which serviced the restaurant. When it was discovered that the transfer documents left out these lots, the parties executed an act of correction to evidence the true intent of the parties. The testimony disclosed that it was the true intent of Casten to sell the restaurant along with lots 41, 42, 43 and 44 of Tacony Subdivision, and the buyers intended to buy the same. The intent of the parties was fulfilled by the act of correction. Additionally, Casten freely signed the act of correction. There was no proof that he was deceived into signing the act of correction. It is well settled that the person who signs a document is presumed to know its content, whether he actually read it or not. Shreveport Great Empire Broadcasting, Inc. v. Chicoine, 528 So.2d 633 (La.App. 2d Cir.1988). As it was the parties' intent to transfer the restaurant along with the parking lot, we find that the trial court's determination was not in error as to this issue.

CONTRACT AWARD
Casten also argues that he was owed $90,000 by the defendants of which only $37,500 has been paid. Therefore, $52,500 remains due and unpaid instead of $45,000 which the court awarded. He submits that this was simply an error of calculation by the trial court which this court can correct under LSA-C.C.P. art. 2164. However, we note from the record that when Casten was asked on direct examination how much he was still owed on the contract, he testified $45,000. Additionally, the summary of plaintiff's claims contained in the pre-trial order submitted to the court prior to trial specifically alleges that $45,000 was due under the agreement. Moreover, the judgment for $45,000 was prepared by Casten's attorney and submitted to the court for approval. There is insufficient evidence in the court to determine that any sums in addition to $45,000 are due and owing.
Although plaintiff filed an answer to the appeal seeking damages and attorney's fees, he did not specify that he also sought an increase of the amount due on the contract from $45,000 to $52,500. LSA-C.C.P. art. 2133 requires an answer to the appeal "stating the relief demanded." Jurisprudence has strictly construed this requirement. Roszell v. National Union Five Ins. Co., 602 So.2d 87 (La.App. 3d Cir.), writ denied, 605 So.2d 1365 (La.1992); Arrow Fence Co. v. DeFrancesch, 466 So.2d 631 (La.App. 5th Cir.1985). Therefore, plaintiff's request for an increase is denied.

DAMAGES AND ATTORNEY'S FEES
Casten lastly contends that he is entitled to damages and attorney's fees for the defendants' breach of their obligation under contract law. Damages in the form of judicial interest were awarded, and we find that no other damages are due. Plaintiff also contends that the trial court erred in not awarding attorney's fees. An award of attorney's fees may only be made when authorized by statute or by contract between the parties. Orgeron v. Dobkowski, 476 So.2d 458 (La.App. 1st Cir.1985). In the case sub judice, the consultation agreement entered into between the parties did not contain a provision for attorney's fees, and there is no statutory authority authorizing such an award, absent a vice of consent. Accordingly, the trial court's decision not to award attorney's fees was not in error.

DECREE
For the above and foregoing reasons, that part of the judgment of the trial court finding Hardeman Cordell jointly and individually liable with Robert Powell for $45,000.00 is hereby reversed and set aside and the plaintiff's suit against Cordell is dismissed. In all other respects, the judgment of the trial court is affirmed. All costs of the trial and appellate courts are to be paid equally by Robert Powell and Chris Casten.
*129 AFFIRMED IN PART, REVERSED IN PART.