BROWN, Chief Judge,
dissents on rehearing.
|]On rehearing, the majority has with sleight of hand changed the dispositive analysis of this case from one of “cause or a vice of consent” to “ambiguity.” They have also ignored the recent unanimous Louisiana Supreme Court’s decision of Peironnet v. Matador Resources Co., 12-2292 (La.06/28/13), — So.3d -, 2013 WL 3752474.
The majority now states that “[t]he Ar-buckle Deed is ambiguous” in that the two “clauses are mutually inconsistent, or, at least, confusing.” In fact, the two clauses transferring property are clearly consistent and definitive. The Trust transferred what it owned to the Arbuckles. All the parties and their attorneys knew that Franklin had previously transferred the property to the Trust with a mineral reservation. The Trust did not own the minerals. Franklin as one of the two trustees signed the deed with the “subject to” language. Thereafter, the holder of the mineral reservation, Franklin, signed a second time in his personal capacity specifically transferring his mineral interest. There is nothing inconsistent or unclear about this.
The Arbuckle Deed was drafted to transfer ownership, including the minerals, to the Arbuckles for the purpose of building a home. The parties and them attorneys stated that they read the contents of the writing to which they all affixed their signatures. Neither Franklin nor his attorney questioned, sought any clarification or discussed the clear language that transferred his mineral rights. The Arbuckles built their home on the land and now, some seven years later with the discovery of the Haynesville Shale, Franklin claims that he did not intend to transfer his mineral rights. The majority writes that Franklin’s alleged intent to keep the minerals makes the deed ambiguous and con *195 fusing. This is fallacious reasoning. While | gFranklin’s motive or cause may be questionable, the clarity of the deed is not.
I further note that before this action was lodged, the property was leased from the Arbuckles, and a producing well was drilled in the unit. Agents for Camterra and Petrohawk found the deed to be clear as to the ownership of the land and minerals. La. C.C. art. 3342 provides that “[A] party to a recorded instrument may not contradict the terms of the instrument or statements of fact it contains to the prejudice of a third person who after its recor-dation acquires an interest in or over the immovable to which the instrument relates.” By finding the deed to be ambiguous, the majority has now prejudiced these oil and gas companies.
A transfer of immovable property must be made by authentic act or by act under private signature. La. C.C. art. 1839. A mineral right is an incorporeal immovable. La. R.S. 31:18. When the law requires a contract to be in written form, the contract may not be proved by testimony or by presumption, unless the written instrument has been destroyed, lost, or stolen. La. C.C. art. 1832. Generally, parol (testimonial) evidence is not admissible to contradict, vary or modify a written instrument. Notwithstanding, while “[testimonial or other evidence may not be admitted to negate or vary the contents of [a writing], ... in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent....” La. C.C. art. 1848; Harnischfeger Sale Corp. v. Sternberg Co., 179 La. 317, 327, 154 So. 10, 13 (1934).
Consent may be vitiated by error, fraud, or duress. La. C.C. art. 1948. However, error vitiates consent only when it concerns a cause without which |3the obligation would not have been incurred and that cause was known or should have been known to the other party. La. C.C. art. 1949.
A similar case out of this court was Peironnet v. Matador Resources Co., 47,190 (La.App.2d Cir.08/01/12), 103 So.3d 445. This case, written by Judge Stewart, was reversed by an unanimous supreme court. See Peironnet v. Matador Resources Co., 12-2292 (La.06/28/13), — So.3d -, 2013 WL 3752474.
Peironnet arose out of a one and one-half year extension of a three-year primary term oil and gas lease covering 1805.34 acres in the southern part of Cad-do Parish. Plaintiffs sued the lessee, Matador Resources Company, to rescind or reform the extension agreement making it applicable only to 168.95 nonproducing acres. The supreme court concluded that plaintiffs were precluded by law from advancing their claim of unilateral error given their inexcusable failure to read and question the unambiguous extension agreements and that summary judgment on this issue was appropriate as a matter of law. The court reversed the judgment of the court of appeal, finding:
In the present case, plaintiffs alleged their agent, Moore, was mistaken on the cause of the agreement — in essence he did not understand the Extension Agreement extended the entirety of the Lease — and the defendants knew or should have known of his misunderstanding. In response, defendants raised the defense of contractual negligence, demonstrating through affidavits and documentary evidence: (1) the plaintiffs could show no excuse for failing to read and understand the clear terms of the Extension Agreement, which was written “in plain English, without technical language or terms of art,” explicitly extending the primary term of the Lease from three to four and one-half years; (2) plaintiffs’ agents, *196 particularly Moore and Hand, were self-proclaimed experts in dealing with oil and gas matters, including oil and gas leases; and (3) the original lease between the parties was executed on Regions’s own lease form band undisput-ably extended to all depths during the primary term.
Applying the modern civilian concept of inexcusable error as advanced in our contractual negligence defense to these undisputed facts, we find, as did the District Court, reasonable persons could not disagree the alleged error on the part of the plaintiffs’ agents in this case was easily detectable and could have been rectified by a minimal amount of care, i. e., by simply reading the document and/or by requesting simple changes to the written offer before acceptance. See Scott, 512 So.2d at 362-63; see also Tweedel v. Brasseaux, 433 So.2d 133, 137 (La.1983)(“The presumption is that parties are aware of the contents of writings to which they have affixed their signatures ... The burden of proof is upon them to establish with reasonable certainty that they have been deceived.... If a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentatively whilst this is being done.”). Moreover, it is undisputable the agents of the complaining party, Regions’s petroleum landmen, were both “through education and experience in a position which renders [their] claim of error particularly difficult to rationalize, accept, or condone.” Scott, 512 So.2d at 362-63.
[[Image here]]
It follows, therefore, the plaintiffs’ failure to question the extension, to seek clarification of the acreage covered, or to even discuss the Deep Rights demonstrates an inexcusable lack of “elementary prudence” or simple diligence that now precludes their rescission of the agreement.
In light of these undisputed facts, we find the plaintiffs were precluded by law from advancing a unilateral theory of error due to their own inexcusable error, and defendants were entitled to summary judgment as a matter of law. (Emphasis added).
Peironnet, No. 2012-C-2377, — So.3d at -, 2013 WL 3752474, at *18-20 (La.06/28/13).
This is exactly the factual scenario in the case at hand. The language in the Ar-buckle Deed transferred Franklin’s mineral interest to the Arbuckles. Franklin had experience and knowledge concerning mineral rights, as he had reserved the minerals on a number of occasions, including |fiwhen he transferred the property at issue to the Educational Trust. Franklin’s attorney, through education and experience, was in a position to understand the effect of the language in the deed. As the supreme court did in Peironnet, supra, I find the claim now of error “particularly difficult to rationalize, accept, or condone.”