560 So.2d 971 (1990)
ANDERSON WINDOW & PATIO COMPANY, INC.
v.
Edward DUMAS.
No. 89-Ca-1398.
Court of Appeal of Louisiana, Fourth Circuit.
April 26, 1990.
*972 H.O. Brickson, Bryant, Renneker & McLean, New Orleans, for plaintiff/appellant.
John S. Keller, Keller & Associates, Ltd., New Orleans, for defendant/appellee.
Before GARRISON, BARRY and BECKER, JJ.
BARRY, Judge.
Anderson Window & Patio Company, Inc. sued Eddie Dumas to enforce its subcontractor's privilege under Louisiana Private Works Act, La.R.S. 9:4801 et seq., for recovery of $2,597.40 representing labor and materials to install thirty-seven storm windows at Dumas' house. Dumas had contracted with Louisiana Power Savers, to have the windows installed. Anderson's *973 work was accepted by Dumas but Anderson never received payment. Dumas answered that Louisiana Power Savers [LPS] installed the windows as the agent of Anderson. Anderson was paid by means of a $5,500 payment to LPS.
Dumas reconvened for attorney's fees and cross-claimed against Raymond Peacock d/b/a LPS for its failure to pay for the Anderson labor and materials and prayed for full indemnification if cast in judgment to Anderson. Anderson answered Dumas' reconventional demand.
Stipulations prior to trial included:
In November, 1986 Dumas entered into a contract with LPS for the installation of storm windows at his property. Dumas did not require LPS to furnish a bond nor did he file the contract with the Orleans Parish Recorder of Mortgages. Dumas accepted the work and paid $5,500 to LPS. Anderson recorded its claim with the Recorder of Mortgages on January 30, 1987 for the cost of materials and labor. Dumas did not contract with Anderson for the labor and materials to install the windows. Anderson's only involvement with Dumas was through LPS.
The trial court summarized the facts:
Mr. Tom Green on behalf of LPS contacted the Defendant to discuss installation of storm windows. After meeting with Mr. Green, the Defendant decided to purchase these windows. Mr. Green then took the appropriate measurements, and, after the windows were manufactured by the Plaintiff, Mr. Green returned to install them. At Mr. Green's suggestion, the Defenant [sic] obtained financing through Colonial Mortgage Company. Upon completion of the job, the Defendant endorsed the mortgage company's check to LPS and handed it to Mr. Green.
The trial court dismissed Anderson's petition and Dumas' reconventional demand and concluded in his reasons for judgment:
After reviewing the documents admitted into evidence and the testimony of the witnesses, the Court finds many inconsistencies in regard to the relationship among the parties. This entanglement of the parties leads this Court to the conclusion that Mr. Green was acting on behalf of both LPS and the Plaintiff in his dealings with the Defendant. Since an agency relationship exists between Tom Green and the Plaintiff the Court finds that the Defendant's payment to Tom Green represents payment to the Plaintiff, Anderson Window & Patio Co., Inc.
Anderson argues that the trial court committed two errors:
1) By assuming that the document transferred by Dumas to Green was a check in payment for the work;
2) By holding that the transfer of a check that is not payable to the transferee constitutes payment to that transferee or his principal.

TESTIMONY
James Johannesen, Office Manager for Anderson, testified that LPS telefaxed the Dumas order to Anderson in November, 1986. Anderson had an installer measure and install the thirty-seven storm windows after credit was approved. Johannesen prepared the invoice on December 17, 1986 and sent it to LPS. Johannesen stated that LPS was his customer, not Dumas and he did not send Dumas a copy of the invoice. He did not know whether an Anderson employee contacted Dumas to measure the windows, but there was a notation to call the day before installation.
Johannesen testified that it was customary for a subcontractor to pick up the windows at Anderson's dock, but in Dumas' file there was no signature to indicate the person who made the pick up and Tom Green delivered the windows. Anderson's records indicate a bill for the installation and Anderson's check payable to Green for the installation. The Anderson measuring sheet indicated Dumas was the customer but Johannesen testified that Dumas was not Anderson's customer. LPS's name appeared next to "dealer" on the measuring sheet. Johannesen would not say LPS was a dealer for Anderson. He stated that "dealer" was a term used for all contractors *974 because Anderson was not a retailer and did not sell directly to customers. The invoice indicated the windows were sold to LPS. The Dumas contract listed LPS as the other party.
Johannesen said that Anderson never notified a homeowner that the windows were not purchased directly from LPS. When asked about Anderson's arrangement with LPS from JulyDecember, 1986, Johannesen replied that Anderson would "run the jobs" and Anderson expected payment upon completion from LPS. He did not know all the methods LPS used to obtain business, but he knew that LPS had a showroom and display in the Landmark Hotel. He did not know if Anderson's windows were displayed.
Johannesen denied that the relationship between Anderson and LPS was "like a partnership." He said Anderson never solicited a job or directly contacted a homeowner. Johannesen stated he could not speculate on the possibility that LPS was holding itself out as a manufacturer and installer.
Johannesen testified that Anderson paid Tom Green $344.10 for the installation. The check included a $200 loan and withheld worker's compensation. Johannesen denied Green was Anderson's employee. Rather he claimed Green was a subcontractor. He stated that it was customary to withhold worker's compensation for subcontractors. Yet Johannesen declared that Anderson delivered the windows to Dumas through Anderson's agent, Green.
Johannesen stated that Anderson had no contract with LPS and summed up the business relationship among the parties: "Tom Green does work for us, and we basically do work for our customers. In this case Louisiana Power Savers."
Thomas Green, the installer, testified that he is an independent contractor with an office in his residence. He claimed that he worked for several companies during November-December, 1986. Johannesen contacted him to measure the Dumas job. Green gave the measuring sheets to Johannesen and wrote up a shop order. Green picked up the windows at Anderson's dock and completed the Dumas installation on December 12, 1986. Johannesen paid him by check on December 13, 1986.
Green did not think that he signed for the windows at Anderson's dock, but he turned in his Anderson measuring sheet with the bill after he installed the windows. He did not know if someone at the Dumas house signed for the window installation and he did not keep such a record. Green testified that he worked for several companies that dealt with Anderson. His ledger indicated that he worked directly for Anderson on some jobs. He said that in those instances Anderson was the contractor with no other company such as LPS involved. Green told the court he did the Dumas job for LPS. Green conceded that when he went to a customer's house, he represented LPS; however, he was paid by Anderson.
Eddie Dumas testified that an employee of LPS telephoned his house and invited him and his wife to a demonstration at the Landmark Hotel in November, 1986. He contracted with LPS to install the windows and identified the contract. Dumas stated that he dealt with the man he thought came from LPS, Green, who installed the windows.
Dumas testified that he obtained a second mortgage from Colonial Mortgage Company to pay for the windows because LPS had Colonial Mortgage contact him. Colonial withheld the $5,500 check until the work was complete. When Green finished, Dumas signed a document stating that the work had been completed satisfactorily. Green was to turn in the completion certificate in order to get the check from Colonial Mortgage.
Dumas testified that Green did not wear a uniform and his truck had no markings. He said Green did not reveal that he worked for Anderson rather than LPS. The check for $5,500 was endorsed by Mrs. Dumas in favor of LPS. Dumas said that had he known Anderson was involved he would have placed Anderson on the check with LPS.
*975 ARGUMENT
Anderson correctly argues that there was no evidence or testimony to prove that the document which was transferred from Dumas to Green was a check. Dumas testified the document was a completion certificate. According to Dumas, such a document was to be given to Colonial Mortgage in order for the check to be released. However, both sides stipulated that Dumas accepted the job and paid LPS $5,500. Therefore, Dumas' payment to LPS was not at issue. Whether the document turned over to Green was a check or a certificate makes no difference. Dumas testified that he had no reason to believe that the check was not given by Colonial Mortgage to LPS since LPS made the arrangements. Dumas said that he was making payments on the second mortgage and assumed that the check had been cashed. The trial court's perhaps erroneous conclusion that payment was made to Green is of no consequence because its decision was based upon a finding of an agency relationship.
Anderson's argument that the transfer of the Colonial Mortgage Company check (assuming the document was a check) endorsed to LPS and not Anderson could not constitute payment of Anderson's bill has no merit in the context of an agency relationship. The trial court ruling was based on the conclusion that Green acted on behalf of LPS and Anderson and that an agency relationship existed among Green, LPS and Anderson in their business dealings.
Dumas argues that Anderson was aware that LPS held itself out as the seller and installer of the windows, but did not object or inform Dumas or other third parties that LPS was not its agent. Dumas argues the purchase agreement, the other paperwork, and the lack of any information to the contrary led him to believe that LPS, Anderson and Green constituted one company with which he had a contract.
Under Louisiana law an agency relationship is created by express appointment of a mandatory under La.C.C. Art. 2985 or by implied appointment arising from apparent authority in order to protect innocent third parties. Roberson Advertising Service Inc. v. Winnfield Life Insurance Company, 453 So.2d 662 (La.App. 5th Cir.1984), Lou-Ark Equipment Rentals Company v. Houg Ah Fong, 355 So.2d 1019 (La.App. 4th Cir.1978), writ refused 357 So.2d 1167 (La. 1978). An agent is one who acts for or in place of another by authority from the latter. An agency relationship may be created by the parties either expressly or by implication. Martin Fuel Distributors, Inc. v. Trans Gulf Fuel, 496 So.2d 473 (La.App. 1st Cir.1986), writ denied 498 So.2d 753 (La. 1986). Agency may be created verbally, in writing, or by implication. Mitchell Engineering Co. v. Ronald A. Goux Inc., 413 So.2d 942 (La.App. 1st Cir.1982), writ denied 420 So.2d 173 (La.1982).
The essential test to determine whether implied agency exists is whether the principal has the right to control the conduct of the agent and whether the agent has the right and authority to represent or bond the principal. Craft v. Trahan, 351 So.2d 277 (La.App. 4th Cir.1977), writ refused 353 So.2d 1336 (La.1978). Apparent agency arises when the principal has acted in such a manner so as to give an innocent third party the reasonable belief that the agent has the authority to act for the principal. Davidson v. Board of Trustees, State Employees Group Benefit Program, 481 So.2d 708 (La.App. 1st Cir.1985); Jackson v. Wal Mart Properties, Inc., 452 So.2d 409 (La.App. 3rd Cir.1984). Implied agency is established by the words and conduct of the parties and the circumstances of the case. An agency relationship may be created even though there is no intention to do so. Sales Purchase Corporation v. Puckett, 417 So.2d 137 (La.App. 2nd Cir.1982), writ denied 421 So.2d 250 (La.1982).
At trial there was contradictory testimony on several issues including Green's capacity. Whether Green worked for LPS or for Anderson, whether he held himself out as an employee of LPS and/or Anderson to homeowners/customers, whether LPS worked as an agent for Anderson, and whether LPS exhibited and demonstrated Anderson Windows in the Landmark Hotel are questions not definitively *976 answered by the trial testimony and evidence.
The trial court found it significant that Green said he performed the job for LPS as the dealer for Anderson windows although his ledger showed that on other jobs he worked directly for Anderson which claimed to be only a wholesaler. The court noted that Green claimed to be an independent contractor, but Johannesen testified that Green worked for Anderson which carried Green on its compensation policy. The court felt that Anderson's position that it was strictly a wholesaler was further contradicted by Green's measurement form, completion sheets, and packing tickets which were supplied by Anderson (Anderson was printed across the top of the documents). However, the contract for services, the acknowledgement and agreement to purchase were provided by LPS.
Under the unusual circumstances of this case we have no basis to conclude that the trial court erred by finding the existence of an agency relationship. Dumas reasonably concluded that he was dealing with LPS (which solicited his business, contracted with him, and was the only company he knew) when Green, who was hired by Anderson to install the windows sold to LPS for the Dumas job, came to his house. Green did not clarify to the customer which company he represented. He testified he represented LPS at the houses; Johannesen said Green was Anderson's agent when he delivered the windows. We cannot find that the trial court manifestly erred in concluding that Green represented both LPS and Anderson. Since the two companies were so interrelated on the Dumas job, we cannot conclude the trial court was clearly wrong in finding that Dumas' payment to LPS (the only company of which he was aware) constituted payment for the Anderson windows.
The trial court properly dismissed Anderson's petition and Dumas' reconventional demand. The judgment is affirmed.
AFFIRMED.