663 So.2d 429 (1995)
JCM CONSTRUCTION COMPANY, INC.
v.
ORLEANS PARISH SCHOOL BOARD.
ORLEANS PARISH SCHOOL BOARD
v.
Michael J. GEGG, d/b/a JCM Construction Co., et al.
Nos. 95-CA-0567, 95-CA-0568.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1995.
Writ Denied February 2, 1996.
*430 Robert M. Rosenberg, Larry C. Becnel, Polack, Rosenberg & Endom, New Orleans, for Appellee (Orleans Parish School Board).
J. Warren Gardner, Jr., Scott P. Yount, Christovich & Kearney, New Orleans, for Appellant (Michael J. Gegg, d/b/a JCM Construction).
Joseph H. Hurndon, James L. Yates, Hurndon & Gaffney, New Orleans, for Defendant-Appellant (Integon Indemnity Corporation).
Before SCHOTT, C.J., and KLEES and PLOTKIN, JJ.
KLEES, Judge.
Appellants, Michael J. Gegg d/b/a JCM Construction Company ["Gegg"] and Integon Indemnity Corporation ["Integon"], challenge the district court's granting of summary judgment in favor of the Orleans Parish School Board. Additionally, Integon had applied for writs from this court (94-C-2376) from the trial court's denial of its motion for summary judgment. A panel of this court converted the writ application to an appeal and consolidated it with this case.
In 1989, the Orleans Parish School Board advertised for bid proposals, pursuant to the Louisiana Public Contracts Law, La.R.S. 38:2181 et seq., for the relocation of two portable classroom buildings from Karr Junior High School to Harte Elementary School. Appellant Gegg was the successful bidder on the project. Gegg was advised by letter dated November 3, 1989, that he was to contact the School Board's attorney, Mr. Rosenberg, to execute the contract documents.
Article 20 of the "General Conditions" attached to the contract sets forth the contractor's obligation to provide insurance coverage. It states that the contractor "shall effect and maintain, until the date of filing of the Owner's acceptance of the work" six different types of insurance, including "Builders' Risk Insurance for Fire, Extended Coverage, Vandalism and Malicious Mischief". Article 21, entitled "Submission of Insurance Policies", states that the contractor must furnish to the School Board notary and the School Board insurance consultant, at least five days prior to the signing of the contract, the required certificates of insurance. The article further provides:
The Contractor will not be permitted to sign the contract before the School Board Notary until the Certificates of Insurance or insurance policies have been approved by the School Board insurance consultant. In the event the successful contractor fails to provide the Certificates of Insurance or insurance policy for review, the amount of guaranty deposited by him will be forfeited to the Orleans Parish School Board, not as a penalty butt as acknowledged liquidated damage.
On November 3, 1989, Gegg submitted to the Laurance Eustis Insurance Agency, Inc., the School Board's insurance consultant, a certificate of insurance showing various types of coverage (general liability, automobile liability, etc.) but not including builder's risk coverage. The certificate of insurance was initially returned by Joseph A. O'Connor, Jr., Vice-President of Laurance Eustis, with a written notation that the School Board should be listed as the certificate holder rather than Laurance Eustis. Gegg submitted a new certificate of insurance correcting this error, and on November 16, 1989, Mr. O'Connor sent Gegg a letter stating: "We have reviewed the Certificate of Insurance for the above captioned [Karr relocation project] and find it meets the necessary requirements for School Board purposes." The contract was executed on November 17, 1989 and recorded on December 1, 1989.
Gegg began work on the project in February of 1990. On August 9, 1990, after the project was substantially complete but before the School Board had filed its formal acceptance of the work, three juveniles broke into the classrooms and started a fire, which completely destroyed the two portable buildings.
*431 The School Board refused to pay Gegg the remainder of the money due under the contract. On June 4, 1991, Gegg filed suit against the School Board seeking the balance due him as well as damages for the Board's alleged failure to live up to the contract. On July 14, 1991, the School Board filed suit against Gegg, the three arsonists, Gegg's insurer, and Gegg's surety, Integon, seeking the value of the portable classrooms. The two suits were consolidated.
On June 14, 1994, the School Board moved for partial summary judgment against Gegg and Integon, alleging that they were solidarily liable for all damages sustained by the Board as a result of Gegg's failure to procure builder's risk insurance as required by the contract. Integon also filed a motion for summary judgment. The motions were heard on September 30, 1994. On October 5, 1994, the district court granted the School Board's motion for partial summary judgment against Gegg and Integon. In written reasons for judgment, the court sated that Gegg was obligated to provide the insurance under the terms of the contract and "was not in any way relieved of this obligation." The court apparently relied upon the fact that the contract required any modification of its terms to be in writing, signed by both parties. The court further stated that Integon was solidarily liable, up to the amount of its surety bond, because it had guaranteed the performance of all obligations assumed by Gegg under the contract.
Following the judgment, Gegg moved for a new trial based upon alleged "newly discovered evidence." This evidence was a statement by Gegg's insurance agent that a standard builder's risk insurance policy would not have covered the fire in question. The trial court denied Gegg's motion.
Gegg and Integon now appeal the granting of summary judgment and the denial of the motion for new trial. On appeal, Gegg argues that the trial court erred in granting summary judgment because: (1) the correspondence exchanged between the parties prior to the execution of the contract effectively modified the contract as to the requirement concerning builder's risk insurance; and (2) the School Board waived its right to claim breach of contract by approving the certificate of insurance submitted by Gegg. Gegg also argues that the trial court should have granted the motion for new trial on the grounds that the impossibility of obtaining builder's risk coverage on the project renders the contractual provision void. Additionally, Integon argues that the trial court erred in holding it liable for Gegg's failure to obtain insurance because the obligation to procure insurance was to be completed prior to the execution of the contract and was not related to the performance of the work.
An appellate court should review a summary judgment de novo under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991). Therefore, under Code of Civil Procedure article 966, the district court's granting of summary judgment must be reversed unless the record demonstrates that there is no genuine issue as to material fact and that appellee is entitled to judgment as a matter of law. Tugwell v. State Farm Insurance Company, 609 So.2d 195, 197 (La.1992).
After reviewing the record, we reverse the judgment of the trial court against Gegg and Integon and grant summary judgment in favor of Integon.
Appellants argue that the School Board's acceptance of Gegg's certificate of insurance prior to executing the contract precludes the School Board's subsequent claim that Gegg is liable for failing to obtain builder's risk insurance. Gegg submitted a certificate of insurance to the School Board showing types and amounts of insurance he had obtained. Builder's risk insurance was not listed on the certificate; however the School Board's insurance consultant approved the certificate as satisfactory for the School Board's purposes. The School Board executed the contract without demanding any further insurance from Gegg. Following the reasoning of Leitz v. Lambert, 219 So.2d 2 (La.App. 4th Cir.1969), the School Board's acceptance of the certificate precludes any questions about the sufficiency of Gegg's insurance coverage.
*432 The School Board counters by relying on Myers v. Burger King Corporation, 618 So.2d 1123 (La.App. 4th Cir.1993). In Myers, the issue was whether Burger King, as owner, had waived its right to claim its contractor had breached the insurance provisions in the contract. The contract provided that a certificate of insurance acceptable to the owner had to be filed with the owner prior to commencement of the work, and gave the owner (Burger King) the option to terminate the agreement if the contractor failed to comply with this provision. 618 So.2d at 1126. In that case, the certificate of insurance was not submitted prior to the commencement of the work. An accident occurred during the performance of the work, and the certificate of insurance was not issued until later the same day. Id. at 1127. The appellate court held that Burger King had not waived its right to claim damages for breach of contract because the insurable "occurrence" took place before Burger King became aware that it was not insured. The appellate court also stated that Burger King's failure to require the certificate prior to commencement of the work resulted only in a waiver of Burger King's right to terminate the agreement, not of its right to enforce the contractual insurance requirement. Id.
Based on Myers v. Burger King, the School Board argues that by allowing the contract to be signed and the work to commence, it waived only its right to claim forfeiture of Gegg's guaranty. By contrast, Gegg argues that the instant case is distinguishable from Myers because the School Board had knowledge, through its insurance consultant, of the contents of the insurance certificate. In fact, Mr. O'Connor testified, as is confirmed by the letter itself, that copies of his letter approving Gegg's insurance certificate were sent to Mr. Rosenberg, the School Board attorney, and two other School Board members. In response, the School Board argues that Mr. O'Connor's action in approving the insurance certificate was beyond the scope of his authority.
According to Anderson Window & Patio Co. v. Dumas, 560 So.2d 971 (La.App. 4th Cir.1990), an agent is one who acts for or in place of another by authority from the latter. In the instant case, Mr. O'Connor testified that his agency, Laurance Eustis, has had a standing agreement for eight or nine years with the School Board to review certificates of insurance for the Board and to give advice. Thus, there is relationship of agency between the School Board and Mr. O'Connor and Mr. O'Connor had actual authority to engage in this particular transaction with Gegg.
According to Boulos v. Morrison, 503 So.2d 1 (La.1987), the principal will be bound for agent's actions if principal has given innocent third party a reasonable belief that agent has authority to act for principal. In the instant case, article 21 of the contract states that the contractor will not be permitted to sign the contract before the School board Notary until the Certificates of Insurance or insurance policies have been approved by the School Board insurance consultant. This provision gave Gegg a reasonable belief that Mr. O'Connor had the authority to act for the School Board.
Furthermore, in order to avoid personal liability to the third person, it is the agent's burden to prove that he contracted as an agent rather than as an individual, by notifying the third party of his agency relationship, including the principal's identity. Dash Bldg. Materials Center v. Henning, 560 So.2d 653 (La.App. 4th Cir.1990). The facts show that Mr. O'Connor did inform Gegg that he was acting for the School Board and not as an independent agent when he notified Gegg that the School Board should be listed as the certificate holder rather than Laurance Eustis. Thus, the facts are undisputed that Mr. O'Connor had the authority to approve Gegg's certificate of insurance as agent of the School Board.
The trial judge denied Integon's motion for summary judgment in which Integon asserted that it could not be held liable for Gegg's failure to obtain Builders' Risk insurance prior to the signing of the contract, a failure that was unrelated to the performance of the contract. We agree with Integon. Integon obligated itself to guaranty Gegg's performance of the contract. Gegg was obliged to obtain Builders' Risk insurance before the contract could be signed, although *433 the School Board is now precluded from raising Gegg's failure to satisfy this requirement. Interpreting the agreement as a whole in accordance with Civil Code article 2050, Integon cannot be held liable for Gegg's failure to perform a precontractual obligation. Integon is, therefore, entitled to summary judgment as a matter of law. Appellee has failed to show any genuine issue of material fact that would prevent summary judgment in favor of Integon.
Finally, Gegg and Integon sought a new trial on the basis of newly discovered evidence. The new evidence is a statement by Gegg's insurance agent, who claims that Builders' Risk insurance is not generally available for projects like the one performed by Gegg for the School Board. The School Board replies that this evidence was easily accessible to Gegg and Integon and should have been discovered earlier. In view of our decision this issue is moot.
Accordingly, the summary judgment granted in favor of the Orleans Parish School Board against Michael J. Gegg d/b/a JCM Construction Company is reversed and remanded to the trial court for further proceedings. Furthermore, the summary judgment granted in favor of the Orleans Parish School Board against Integon Indemnity Corporation is reversed and summary judgment is rendered dismissing Integon Indemnity Corporation from this lawsuit.
REVERSED AND REMANDED.