708 So.2d 425 (1998)
ORLEANS PARISH SCHOOL BOARD
v.
Michael J. GEGG, et al.
JCM CONSTRUCTION COMPANY, INC.
v.
ORLEANS PARISH SCHOOL BOARD.
Nos. 97-CA-0947, 97-CA-0948.
Court of Appeal of Louisiana, Fourth Circuit.
January 14, 1998.
Rehearing Denied February 17, 1998.
*426 J. Warren Gardner, Jr., Scott P. Yount, Christovich & Kearney, New Orleans, for Appellant.
John W. Hite, III, Sessions & Fishman, L.L.P., New Orleans, for Appellee.
Before PLOTKIN, JONES and CIACCIO, JJ.
JONES, Judge.
Appellant Michael J. Gegg d/b/a JCM Construction Company (Gegg), appeals the district court's decision granting summary judgment in favor of the Defendants: Orleans Parish School Board, Laurance Eustis Insurance Agency, Inc., Employers Reinsurance Corporation, and Joseph A. O'Connor, Vice President of Laurence Eustis Insurance, Inc. (collectively "Eustis").

FACTS
In 1989, the Orleans Parish School Board advertised for bid proposals, pursuant to the Louisiana Public Contracts Law, LSA-R.S. 38:2181 et seq., for the relocation of two portable classroom buildings from Karr Junior High School to Harte Elementary School. Gegg was the successful bidder on the project. Gegg was advised by letter dated November 3, 1989, that he was to contact the School Board's attorney, Mr. Rosenberg, to execute the contract documents.
Article 20 of the "General Conditions" attached to the contract sets forth the contractor's obligation to provide insurance coverage. It states that the contractor "shall effect and maintain, until the date of filing of the Owner's acceptance of the work" six different types of insurance, including "Builders' Risk Insurance for Fire, Extended Coverage, Vandalism, and Malicious Mischief." Article 21, entitled "Submission of Insurance Policies," states that the contractor must furnish to the School Board's notary and the School Board's insurance consultant, at least five days prior to the signing of the contract, the required certificates of insurance. The article further provides:
The Contractor will not be permitted to sign the contract before the School Board Notary until the Certificates of Insurance or insurance policies have been approved by the School Board insurance consultant. In the event the successful contractor fails to provide the Certificates of Insurance or insurance policy for review, the amount of guaranty deposited by him will be forfeited to the Orleans Parish School Board, not as a penalty but as acknowledged liquidated damage.
On November 3, 1989, Gegg submitted to the Laurance Eustis Insurance Agency, Inc., the School Board's insurance consultant, a certificate of insurance showing various types of coverage (general liability, automobile liability, etc.) but not including builder's risk coverage. The certificate of insurance was initially returned by Joseph A. O'Connor, Jr., Vice-President of Laurance Eustis, with a written notation that the School Board should be listed as the certificate holder rather than Laurance Eustis. Gegg submitted a new certificate of insurance correcting this error, and on November 16, 1989, Mr. O'Connor sent Gegg a letter stating: "We have reviewed the Certificate of Insurance for the above captioned [Karr relocation project] and find it meets the necessary requirements for School Board purposes." The contract was executed on November 17, 1989, and recorded on December 1, 1989.
Gegg began work on the project in February of 1990. On August 9, 1990, after the project was substantially complete, but before the School Board had filed its formal acceptance of the work, three juveniles broke into the classrooms and started a fire, which completely destroyed the two portable buildings.
The School Board refused to pay Gegg the remainder of the money due under the contract. On June 4, 1991, Gegg filed suit against the School Board seeking the balance due him as well as damages for the Board's alleged breach of contract. On July 14, 1991, the School Board filed suit against Gegg, the three arsonists, Gegg's insurer, and Gegg's surety, Integon Indemnity Corporation (Integon), seeking the value of the portable classrooms. The two suits were consolidated.
*427 On June 14, 1994, the School Board moved for partial summary judgment against Gegg and Integon, alleging that they were solidarily liable for all damages sustained by the Board as a result of Gegg's failure to procure builder's risk insurance as required by the contract. Integon also filed a motion for summary judgment. The motions were heard on September 30, 1994.
On October 5, 1994, the district court granted the School Boards's motion for partial summary judgment against Gegg and Integon. In written reasons for judgment, the court stated that Gegg was obligated to provide the insurance under the terms of the contract and "was not in any way relieved of this obligation." The court apparently relied upon the fact that the contract required any modification of its terms to be in writing, signed by both parties. The court further stated that Integon was solidarily liable, up to the amount of its performance of all obligations assumed by Gegg under the contract.
Following the judgment, Gegg moved for a new trial based upon alleged "newly discovered evidence." This evidence was a statement by Gegg's insurance agent that a standard builder's risk insurance policy would not have covered the fire in question. The trial court denied Gegg's motion.
Gegg and Integon appealed the district court's granting of summary judgment in favor of the School Board. Additionally, Integon had applied for writs from this court (94-C-2376) from the trial court's denial of its motion for summary judgment. A panel of this Court converted the writ application and consolidated it with Gegg and Integon's appeal.
On appeal, Gegg argued that the trial court erred in granting summary judgment because: (1) the correspondence exchanged between the parties prior to the execution of the contract effectively modified the contract as to the requirement concerning builder's risk insurance; and (2) the School Board waived its right to claim breach of contract by approving the certificate of insurance submitted by Gegg. Gegg also argued that the trial court should have granted the motion for new trial on the grounds that the impossibility of obtaining builder's risk coverage on the project renders the contractual provision void. Additionally, Integon argued that the trial court erred in holding it liable for Gegg's failure to obtain insurance because the obligation to procure insurance was to be completed prior to the execution of the contract and was not related to the performance of the work.
On appeal the summary judgment granted in favor of the School Board against Integon was reversed and summary judgment was rendered dismissing Integon from the lawsuit. Accordingly, the issue concerning Gegg and Integon's motion for a new trial on the basis of newly discovered evidence was found to be moot. The matter was remanded to the trial court for further proceedings.
On remand Gegg submitted a Second Supplemental and Amending Petition adding: Laurance Eustis Insurance Agency, Inc., Employers Reinsurance Corporation, and Joseph A. O'Connor, Vice President of Laurance Eustis Insurance Agency, Inc., as Defendants. Gegg alleged that Eustis is liable for negligent misrepresentation and detrimental reliance. On October 3, 1996, Eustis filed a Motion for Summary Judgment arguing that as a disclosed agent for the School Board they cannot be held liable. The district court granted summary judgment in favor of Eustis.

DISCUSSION
An appellate court should review a summary judgment de novo under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991). Therefore, unless the record indicates that there is no genuine issue as to material fact and the appellee is entitled to judgment as a matter of law, the district court's granting of summary judgment must be reversed. LSA-C.C.P.art. 966(B).
In 1996, the Louisiana Legislature enacted amendments to Louisiana Code of Civil Procedure Article 966. The amendment provides that summary judgment shall be granted when it is shown that there is no genuine issue as to material fact and the *428 mover is entitled to judgment as a matter of law. Additionally, once the moving party presents a prima facie case that no genuine issues of material fact exist, the burden shifts and the party opposing the motion "must make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial." LSA-C.C.P. 966(C). "[T]he non-moving party is no longer allowed to rely on the allegations of its pleadings in opposition to a properly supported motion for summary judgment." Oakley v. Thebault, 96-0937 (La.App. 4 Cir. 11/18/96); 684 So.2d 488, 490.
This Court in Oakley held that the amendment changed the law to the extent that summary judgments are favored. In interpreting the amendment, the Court determined that:
[t]he language of the amendment tracks the language of Federal Rule of Civil Procedure 56, and is designed to allow courts to decide whether enough evidence exists to go to trial, thus giving judges an opportunity to weed out meritless cases.
Finally, because the amended rules are to be applied liberally, it is incumbent upon the courts to change their attitudes from the pre-amendment jurisprudence which held that summary judgments were not favored and should be strictly construed. Oakley, 684 So.2d at 490.
In 1997 the legislature by 1997 La. Acts 483, Section 1, further amended Louisiana Code of Civil Procedure Article 966, adding subparagraph C(2) which provides:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. The preamble to Act 483 indicates that the purpose of paragraph C is "to establish and allocate the burden of proof." The act further states, "[t]he purpose of Sections 1 and 3 of this Act is to clarify Acts 1996, No. 9, § 1 of the First Extraordinary Session of 1996 and to legislatively overrule all cases inconsistent with Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691." 1997 La. Acts 483.
After reviewing the record, we affirm the judgment of the trial court against Gegg and grant summary judgment in favor of Eustis.
In this appeal the Appellant argues that Louisiana Civil Code article 3012 does not exclude Eustis from liability because his claims arise out of Eustis' tortious acts. Gegg claims that he is entitled to recover damages under the theory of negligent misrepresentation. In Addition, Gegg also claims he is entitled to recover lost income. Lastly, Gegg asserts that he is entitled to recover for physical injuries caused by Eustis; more specifically, past, present and future, mental and emotional injuries.
Citing Young v. Oberhelman, 607 So.2d 719 (La.App. 4 Cir.1992), the Appellant argues that Louisiana Civil Code articles 2315 and 2316 allow a plaintiff to recover under the theory of negligent misrepresentation if it can be established that: (1) the defendant owed a duty to supply correct information, (2) the defendant breached that duty, and (3) the plaintiff suffered damages due to the breach. In order to address Gegg's claims, it is necessary to distinguish Young from the case at hand. Louisiana Civil Code article 2315 provides, in pertinent part, that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Additionally, Louisiana Civil Code article 2316 provides that "[e]very person is responsible for the damage he occasions not merely by his act but by his negligence, his imprudence, or his want of skill."
In Young this court reversed a summary judgment granted in favor of the defendants where the purchasers of a home filed suit against the vendor and exterminator, seeking rescission of the sale and damages for their losses. The plaintiffs in Young detrimentally *429 relied on a statement made by the exterminator's employee, which stated that the house was "bug-free". Young, 607 So.2d at 721. The plaintiff in Young alleged that the exterminator, Dr. Bug was liable "under the doctrine of respondeat superior based on the acts of its employees." Id.
Louisiana Civil Code articles 2320, 3012 and 3013 illustrate the distinction between Young and the present case. These articles address liability as it relates to employee-employer and principal-agent relationships. More specifically, article 2320 holds employers liable for damage caused by their employees while in the course and scope of their employment. LSA-C.C. art. 2320. In the alternative, article 3012 states that, "[an agent] who has communicated his authority to a person with whom he contracts in that capacity, is not answerable to the latter for anything done beyond it, unless he has entered into a personal guarantee." LSA-C.C. art. 3012. Consistent with Civil Code article 3012, article 3013 prohibits an agent from being held liable to a person with whom he contracts, unless he has bound himself personally or he has exceeded his authority without disclosure. LSA-C.C. art 3013.
In Young, there was an employer-employee relationship between defendants. However, in this case, this Court decided, "there is a relationship of agency between the School Board and Mr. O'Connor." JCM Const. Co. v. Orleans Parish Sch. Bd., 95-0567 (La.App. 4 Cir. 10/12/95), 663 So.2d 429; writ denied, 95-2748 (La.2/2/92), 666 So.2d 1089. Citing Anderson Window & Patio Co. v. Dumas, 560 So.2d 971 (La.App. 4 Cir. 1990), this court defined an agent as "one who acts for or in the place of another by authority from the latter." Id.
The facts of this case, as earlier discussed by this Court in JCM revealed that:
Mr. O'Connor testified that his agency, Laurence Eustis, has had a standing agreement for eight or nine years with the School Board to review certificates of insurance for the Board and to give advice. The facts [further] show that Mr. O'Connor did inform Gegg that he was acting for the School Board and not as an independent agent when he notified Gegg that the School Board should be listed as the certificate holder rather than Laurence Eustis. Thus, the facts are undisputed that Mr. O'Connor had the authority to approve Gegg's certificate of insurance as agent of the School Board.
Contrary to Appellant's argument, the relationship between Eustis and the School Board is governed by Civil Code articles 3012 and 3013.
In Young, this Court, following a similar case decided in the Third Circuit, agreed that:
the Louisiana Civil Code articles dealing with delictual responsibility, La.C.C. arts. 2315-2316, afford a broad ambit of protection for persons negligently damaged by acts of others sufficient to encompass a cause of action for negligent misrepresentation.
Articles 2315 and 2316 provide causes giving rise to tort actions, including negligent misrepresentation, between parties whose relationship is ungoverned by specific titles of the Civil Code. Appropriately, the section of the Louisiana Civil Code, which includes article 2315 and 2316, is Book III, Title V, Chapter 3 entitled Obligations Arising Without Agreement. The heading illustrates the idea that the articles therein only govern the relationship between parties in the absence of more specific articles.
Also included in Book III of the Civil Code are titles governing relationships of husband-wife, seller-buyer, lessee-lessor, partnership, lender-borrower, depositary-depositor, and principal-agent. The articles included in these sections govern the relationship between the parties, their duties and liabilities to each other, and their duties and liabilities to third parties. It was not the intent of the legislature to render these sections of the Civil Code obsolete by enacting universal articles, namely article 2315 and 2316, to override those which specifically address each relationship and their subtle distinctions. Consequently, it is a party's relationship to another that determines which articles of the Civil Code will govern their liability to each other and to third parties who may contract with them.
*430 Following long standing precedence, this Court has held that an agent, acting in his capacity, avoids personal liability to a contracting third party, when the third party has notice of the agency relationship and the principal has been identified. JCM, 663 So.2d at 432; Meisel v. Natal Homes, Inc., 447 So.2d 511 (La.App. 4 Cir.1984); Duckworth-Woods Tire Service, Inc. v. Smith & Johnson, Inc., 430 So.2d 207 (La.App. 4 Cir. 1983); Ruckman v. Mashburn, 428 So.2d 531 (La.App. 4 Cir.1983); Regency Elec., Inc. v. Verges, 360 So.2d 252 (La.App. 4 Cir.1978). The jurisprudence regarding this issue has remained consistent with the governing Civil Code articles. Civil Code Articles 3012 and 3013, together with the above jurisprudence, eliminate an agent's liability to a third party when the principal-agent relationship is disclosed and the agent has acted within his authority.
Applying this precept to the present case, it was established that the relationship between the Orleans Parish School Board and Eustis was one of a principal-agent nature. JCM, 663 So.2d at 432. It was also established that Eustis disclosed the relationship to Gegg and identified the School Board as the principal. Id. Furthermore, it is clear that Eustis, as an agent for the School Board, acted within his authority.
Therefore, this Court is compelled to follow the statutory and jurisprudential rule which limits an agent's liability to a third party.

DECREE
For the foregoing reasons, the summary judgment granted in favor of Defendants, Laurance Eustis Insurance Agency, Inc., Employers Reinsurance Corporation, and Joseph A. O'Connor is affirmed.
AFFIRMED.