^ARMSTRONG, Judge.
This is an appeal from a summary judgment in favor of the defendants in a personal injury case. The plaintiff, who was employed at a hospital, sued several ambulance companies plus a tow truck company for negligence on the alleged ground that voluminous engine exhaust fumes from their vehicles permeated the area of the hospital in which he worked to such an extent that the plaintiff suffered carbon monoxide poisoning and consequent permanent injuries. All of the defendants moved for summary judgment on the ground that they owed no duty to the plaintiffs. The tow truck company also argued that there was no evidence that its vehicles had contributed to the engine exhaust fumes in the hospital. The trial court granted summary judgment in favor of all defendants and dismissed the plaintiffs suit. The plaintiff appeals. We hold that there are genuine issues of fact material to the question of whether the ambulance companies owed to the plaintiff a duty of care and so we reverse and remand for further proceedings as to them. However, as to the tow truck company, there is no evidence that its vehicles contributed to the engine exhaust fumes in the hospital and so we affirm the summary judgment in favor of that defendant.
^Plaintiff Michael Schiro was employed as an ultrasound technician at Jo Ellen Smith Hospital. The ultrasound department, in which Mr. Schiro worked, was located next to the hospital’s ambulance bay. The ambulance bay was a semi-enclosed space, with portions of the hospital (including the ultra *599 sound unit) on three sides and a roof over it. The fourth side opened onto a parking lot. Ambulances would back into the ambulance bay to unload and load patients. Large doors led from the ambulance bay into the hospital and hallways led from those doors to the ultrasound unit to one side of the ambulance bay and to the emergency room and the hyperbaric department on the other side of the ambulance bay.
Numerous witnesses testified by deposition that engine exhaust fumes from ambulances would enter the hospital from the ambulance bay and, perhaps, from the parking lot outside of the ambulance bay. Ambulances in the ambulance bay frequently, perhaps usually, remained there for fairly extended periods, such as half an hour, with their engines running. Apparently this was done so that the ambulances’ air conditioning could remain on during the summer (the incident at issue occurred in August) or, in the ease of ambulances with diesel engines, to avoid the trouble of restarting the ambulance engines. Because the ambulances were backed into the ambulance bay, so that their rear doors were close to the large hospital doors, their exhaust pipes were toward the hospital doors. There was a black smudge mark on the wall of the ambulance bay from engine exhaust from ambulance exhaust pipes. Ambulances also would be left parked with their engines on in the parking lot outside of the ambulance bay. Ambulance engines were left on, not only while their crews were unloading or loading patients, but also while them crews were talking, drinking coffee, eating, reading newspapers or sleeping while awaiting assignments. Engine exhaust fumes from the ambulances were often smelled in the areas of the hospital adjacent to the ambulance bay. Mr. kSchiro alleges that, in August 1995, while working in the ultrasound department, he was sickened by those fumes and, as a result of the carbon monoxide in those fumes, he was seriously injured.
The ambulance companies, Medic One Ambulance Services d/b/a American Medical Response, the City of New Orleans, C.A.R.E. Ambulance Services, Inc., Priority EMS, Inc. and West Jefferson Medical Center, argue that they had no duty of care toward Mr. Schiro with respect to the engine exhaust fumes from their ambulances. A key factual contention of the ambulance companies, upon which they rely for their no-duty argument, is that, prior to the incident at issue, they had no notice that they should turn off their ambulance engines while they were parked in or around the ambulance bay. They contend that, instead, the first such notice that they received was a memo from the hospital which was sent several days after the incident at issue.
However, there was substantial deposition testimony that, prior to the incident at issue, the ambulance crews were repeatedly told to turn off their ambulances’ engines in the ambulance bay and that this was done because of the smell of engine exhaust fumes inside the hospital. Brock Chamberlain, who was a hyperbaric technician and worked in the hyperbaric department next to the ambulance bay, testified that he told ambulance crews to turn off their engines and that he had even gone into ambulances and turned off their engines himself. John P. Wilson, another hyperbaric technician, also testified that he told ambulance crews to turn off their engines because fumes were coming into the hospital. Randy Springer, the Chief hyperbaric technician and the hospital’s safety officer, also testified that he told ambulance crews to turn off their engines. Darryl Odom, an NOPD officer who worked private detail security at the hospital, testified that he was instructed by doctors to go out and tell the ambulance crews to turn off their engines and that he would do so. Officer Odom also testified that, since prior tto the incident at issue, there was a “brown sign” in the ambulance bay telling the ambulance crews to turn off their engines.
The courts of appeal review the granting of summary judgments de novo using the same standards as the trial courts, and those standards, as modified by the 1996 and 1997 amendments to the Code of Civil Procedure’s Article 966, will not be reviewed in detail here as they have been exhaustively discussed in several of our recent decisions. See Generally Micele v. CPC of Louisiana, Inc., 98-0044 (La.App. 4 Cir. 3/25/98), 709 *600 So.2d 1065, 1067-68, writ denied, 98-1116 (La.6/5/98), — So.2d -; Rust Scaffold Rental & Erection v. River City Joint Venture, 97-2146 (La.App. 4 Cir. 3/18/98), 709 So.2d 1037, 1038-39; Spitzfaden v. Dow Corning Corp., 97-1011, 97-1799 (La.App. 4 Cir. 2/11/98), 708 So.2d 777, 779, writ denied, 98-1016 (La.7/2/98). Despite the recent amendments to Article 966, it remains the law that “unless the record indicates that there is no genuine issue as to material fact and the appellee is entitled to judgment as a matter of law, the district court’s granting of summary judgment must be reversed.” Orleans Parish School Board v. Gregg, 97-0947, 97-0948 (La.App. 4 Cir. 1/14/98), 708 So.2d 425, 427. “In determining whether an issue [of fact] is ‘genuine’ courts cannot consider the merits, make credibility determinations, evaluate testimony, or weigh evidence.” Cressionnie v. Liberty Mut. Ins. Co., 98-0534 (La.App. 4 Cir. 4/8/98), 711 So.2d 364, 366, writ denied, 98-1262 (La.6/19/98), 721 So.2d 476. In the present ease, in light of the above-summarized testimony, we must assume, for purposes of summary judgment, that the ambulance companies were told, pri- or to the incident at issue, to turn off their vehicles’ engines in the ambulance bay.
With that factual assumption in mind, we turn to the issue of whether the ambulance companies had any duty toward Mr. Sehiro. Whether a duty is owed is a question of law. Stroik v. Ponseti, 96-2897 (La.9/9/97), 699 So.2d 1072, 1077. “Duty is a question of law. Simply put, the inquiry is whether the plaintiff has any blaw — statutory, jurisprudential, or arising from general principles of fault — to support his claim.” Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289, 292 (La.1993).
In determining whether to impose a duty in a particular situation, the court may consider various moral, social, and economic factors, including whether the imposition of a duty would result in an unmanageable flow of litigation; the ease of association between the plaintiff’s harm and the defendant’s conduct; the economic impact on similarly situated parties; the nature of the defendant’s activity; moral considerations, particularly victim fault; and precedent as well as the direction- in which society and its institutions are evolving.
Meany v. Meany, 94-0251 (La.7-5-94), 639 So.2d 229, 233.
In the present ease, we believe that the ambulance companies did have a duty to those within the hospital areas adjacent to the ambulance bay, including Mr. Sehiro, to exercise care with respect to the engine exhaust fumes from their ambulances. The ambulances, while in the ambulance bay, were in an area with doors leading into the hospital. Further, the ambulances backed into the ambulance bay so that their exhaust pipes were toward the doors into the hospital. It is common knowledge that a vehicle’s engine exhaust pipes emits carbon monoxide, that carbon monoxide is poisonous and that running vehicle engines in enclosed areas is dangerous. The ambulance bay was mostly enclosed. The ambulance crews were specifically told to turn off their engines. Under those circumstances there was a duty of care.
With respect to the tow truck company, Rudy Smith Towing Services, there is no evidence in the depositions that Rudy Smith trucks were ever in the ambulance bay. Apparently, a Rudy Smith truck was in the parking lot to fix a flat tire on the day of the incident at issue. As there is no evidence fethat the Rudy Smith truck contributed to the engine exhaust fumes in the hospital, summary judgment in favor of Rudy Smith is appropriate.
For the foregoing reasons, we reverse and remand for further proceedings as to the ambulance companies but affirm as to Rudy Smith.

REVERSED IN PART AND REMANDED; AFFIRMED IN PART.

LOBRANO, J., concurs.